*Mr. R. T. Scott,* for plaintiffs in error.

*Messrs. Rosemond, Bell & Dugan,* for defendants in error.

---

THE CITY OF CINCINNATI *v.* LEEDS.

*Dedication of roadway—Established by plats, deeds and public use —Absence of statutory proceedings—Effect of title by turnpike company.*

1. While there was no statutory dedication of what is now known as the Linwood road, the plat and deeds which are in evidence, taken in connection with the use of the strip as a public highway, have operated as a dedication to public use.
2. Such dedication was in nowise prevented by the fact that the way, to which the plat and deed refer and with reference to which they were drawn, was for a long period the property of and under the control of a turnpike company.

(Decided April 25, 1914.)

ERROR: Court of Appeals for Hamilton county.

JONES, O. B., J.; SWING and JONES, E. H., JJ., concurring.

In 1815 John Morten became the owner of a tract of land of about 65 acres fronting on the south side of what is now known as Observatory avenue. About 1847 steps were taken before the county commissioners for the purpose of establishing the county road southeastwardly through this land from Observatory avenue to Wooster pike,

under which viewers were appointed who reported a line of road and recommended that same be opened as a sixty-foot road. The record shows an objection, or notice of appeal, given on the part of a property owner, owning land near Wooster pike, not, however, affecting the part of the Morten property, and the record fails to show that this road was ever opened in accordance with said view.

In 1852 a turnpike or plank road was established through this land. Under a special act (49 O. L., 730) a company was organized, under the name of the Union Bridge & Walnut Hills Turnpike Company, "For the purpose of constructing and maintaining a turnpike or plank road, commencing at the most suitable point in the Walnut Hills, Madisonville and Plainville turnpike, east of Walnut Hills, and running thence eastwardly to the Cincinnati, Columbus and Wooster turnpike, near the residence of John J. Ferris."

The act further provided that "The county of Hamilton shall have a right, after twenty years, to purchase said road, in such a manner as may be prescribed by law."

The record discloses a conflict in the testimony as to just how wide this plank road, as it is called, was opened, witnesses for plaintiff testifying that it was opened to a width of at least 40 feet, and a witness on behalf of defendant testifying that it was opened at least 60 feet in width. The law at that time provided that turnpikes should be not less than 33 feet nor more than 60 feet in width. There is no question but that it was actually improved in front of the property of plaintiff, Emma F. Leeds, to a width of at least 24 feet.

July 2, 1856, a plat of John Morten's 65-acre tract was prepared and placed on record in the county recorder's office on August 14, 1856, which divided said tract into six lots, one of which contained 15.97 acres, marked "reservation, homestead lot," and the other five lots, numbered consecutively from 1 to 5, were marked with the respective names attached to the plat. The plat as recorded had on its margin the following:

"Plat of partition of the estate of John Morten situate in Section 26, Township 4 (now Spencer), 2nd Fractional Range, Miami Purchase, 4 miles north of Cincinnati on actual survey. (Whole tract containing 65.75 acres.)

"R. C. PHILLIPS, *Surveyor.*

"CINCINNATI, July 2d, 1856.

"We, the undersigned, the heirs of John Morten, agree that this plat in partition of the lands of said John Morten, as surveyed and set out by R. C. Phillips, surveyor, is satisfactory to us and we do hereby adopt the same, and bind ourselves, our heirs and assigns to abide by it.

"In testimony witness our hand and seal.

"ANDREW G. MORTEN                      (Seal.)
"CHARLOTTE B. CRYER                     (Seal.)
"MARY ANN MORTEN                        (Seal.)
"THOMAS H. MORTEN                       (Seal.)
"THOMAS CRYER, in trust, etc., for
    M. G. and T. E. Morten             (Seal.)

"Scale 1 inch to 200 feet.

"R. C. PHILLIPS, *Surveyor.*"

This plat delineates streets without giving the width thereof, but it is drawn to a scale, one inch to two hundred feet. Along the northern boundary of the Morten land the plat shows, from the northwest corner to the angle at the north end of plaintiff's property, the road, which is now Observatory avenue, marked "plank road," and east of that point the same road, now Observatory avenue, marked "county road." It also shows a stone in the center of this road 39.75 feet from the west line of lot numbered 2, and a road marked "plank road" extending south 38 degrees east 937 feet to the south line of said Morten tract. The width of this road not being fixed in figures, as above stated, scales slightly over 60 feet.

A deed was executed by John Morten and his wife, of general warranty, conveying lot No. 2, as shown on this plat, to Mary Ann Morten, by the following description:

"All that certain lot or tract of land, situated in the county of Hamilton and state of Ohio, in section twenty-six (26) township four (4) and second (2d) fractional range in the Miami purchase, and known and designated as 'lot No. two (2) on Plat in Partition the lands of John Morten' recorded in Plat Book No. 1, page 281, Hamilton county records, bounded and described as follows, to-wit:

"Beginning at a stone in the north boundary line of said section twenty-six (26) and eastwardly from the N. W. corner thereof one thousand and thirty 89/100 feet (1030.89) being the N. E. corner of lot No. one (1) this day deeded to Thomas Henry Morten, thence with said section line S,

89° 12′ E. thirty-nine 75/100 (39.75) feet to a
stone in the section line and the angle of the plank
road, thence along the center of the plank road S.
38° E. nine hundred and thirty-seven (937) feet
to a stone, thence S. 38′ W. three hundred and
twenty-nine 80/100 (329.80) feet to the south line
of said Morten's land and to a stone therein, thence
along the said south line N. 89° 12′ W. six hun-
dred and twenty-nine 26/100 feet to a stone at the
S. E. corner of lot No. one (1) N. 0° 38′ E. one
thousand and seventy-two 80/100 feet to the stone
at the beginning, containing ten and 46/100 acres
(10.46) of land."

On the same day a deed of special warranty was
executed to Mary A. Morten by Thomas H. Morten
and the other so-called heirs of John Morten, for
the same lot, No. 2, under the same description.
These deeds were both placed on record on the
same day the plat was recorded.

Mary A. Morten, who became the wife of Sam-
uel A. Leeds, thus became the owner of this tract
of land known as lot No. 2, and the plaintiff,
Emma F. Leeds, a stepdaughter, holds her title un-
der a deed from Mary A. Leeds and husband,
which describes the east line as the center of Lin-
wood road.

After the territory which included this prop-
erty had been annexed to the city of Cincinnati,
its platting commission, on February 4, 1875, in
pursuance of law, made a plat of this section on
which Linwood pike is shown as a dedicated street
to a width of 60 feet, on the same location as
shown on the plat of John Morten's estate above
referred to. In 1880 the interests of the turnpike

company were sold under foreclosure proceedings and conveyed by the sheriff to Samuel M. Ferris, under a description which located the road but did not fix its width. On February 18, 1897, Samuel M. Ferris conveyed to the city of Cincinnati the Linwood pike, under a deed which fixed its center line by courses and distances, and conveyed a strip of land 30 feet wide on each side of the center line, the part through the property under consideration coinciding and referring to the plat made by the platting commission.

In 1905 the city improved said Linwood pike to the width of 60 feet, and in so doing caused the fence and certain trees and shrubbery to be removed from between the lines of the road so fixed. The fence as it existed at the time the city commenced its improvement, according to plaintiff's testimony, stood on the same line on which an old fence had existed for many years, and was on a curved or crooked line, extending in its widest part about 29 feet into said highway as so improved, and running from that to a width of nothing at each end.

The petition below stated two causes of action. The first cause asked compensation for the strip of land included within plaintiff's fence and the west line of said Linwood road, and for certain trees and shrubbery thereon, and the second cause of action asked for damages by reason of the change of grade of Linwood road, which made a cut in front of plaintiff's property.

In the trial below, at the conclusion of the plaintiff's testimony, defendant moved to arrest the evidence from the jury and that judgment be given

for the defendant separately in each cause of action, both of which motions were overruled.

After the defendant introduced its evidence and plaintiff introduced her evidence in rebuttal, the defendant again moved that the evidence on each of the two causes of action be arrested from the jury and judgment be entered for defendant. The court refused to arrest the evidence on the first cause of action, but granted the motion on the second cause of action, and made an order dismissing the second cause of action from the case, to which plaintiff excepted.

On submission, the jury rendered a verdict for $1,100 in favor of the plaintiff on the first cause of action, whereupon defendant moved for a judgment notwithstanding the verdict, and also filed a motion for new trial, and plaintiff made a motion to set aside the order dismissing the second cause of action and for a new trial of said second cause of action. All these motions were overruled by the court, and judgment was entered on the verdict for plaintiff on the first cause of action.

A bill of exceptions containing all the evidence in the case was taken, and a petition in error was filed by the defendant, seeking to set aside said judgment, and a cross-petition in error was filed by the plaintiff asking a reversal of the judgment entered against her on the second cause of action.

The question first to be determined is as to the rights of the public in Linwood road, whether or not it is a dedicated street, and if so, to what width.

As was said by the supreme court in the case of *Lessee of Village of Fulton* v. *Mehrenfeld,* 8 Ohio

St., 440, "Dedication of ground for public uses may be made, in Ohio, either under the statute or according to the rules of the common law."

The record here fails to show a statutory dedication. The plat of partition of the John Morten estate was not signed by the owner of the fee, nor was it acknowledged. If it had been signed and acknowledged by the owner of the fee, it, in itself, followed by the public use of the plank road, would have effected a statutory dedication.

While John Morten did not himself sign this plat, it was signed by his children and "heirs," who became at the same time his grantees, and his deed to Mary A. Morten described the property conveyed by reference to that plat, and its description referred to this plank road in such a manner as to show the adoption of that plat by him. And the deed from Mary A. Morten Leeds and husband to the plaintiff below also refers to and uses the center of Linwood road as a part of its description.

"No particular words or ceremonies, or form of conveyances, is necessary to render the act of dedicating land to public uses effectual. Anything which fully demonstrates the intention of the donor, or the acceptance by the public, works the effect." *LeClercq et al.* v. *Trustees of Gallipolis,* 7 Ohio (pt. 1), 220.

It has been repeatedly held that where the owner of real property makes and records a plat showing streets, highways or public squares, and sells land with reference to that plat and the streets, highways or public squares thereon are used by the public, he thereby dedicates them to the public. And this is true whether the plat is properly exe-

cuted and acknowledged or not.   13 Cyc., 455, and cases cited; *Daiber et al.* v. *Scott,* 3 C. C., 313; *Wright* v. *Oberlin,* 23 C. C., 509, 511; *Doren* v. *Horton,* 1 Dis., 401, 404; *Brown* v. *Manning et al.,* 6 Ohio, 298, 303; *Huber et al.* v. *Gazley et al.,* 18 Ohio, 18.

While the record does not clearly show that there was in existence a public highway on this line prior to the construction of the plank road or turnpike, it is clear that from a time earlier than 1856, when this Morten plat was made, there was a traveled highway known as the "plank road" upon that line.

Under the authorities we are of the opinion that the Morten plat and deeds above referred to, taken in connection with the use by the public of the highway shown as the plank road, known now as Linwood road, operated as a dedication of the same to public use, and this notwithstanding the fact that at the time of making that plat the road on that line then in existence was under the control of the turnpike company.

While a turnpike may be owned and operated by a private corporation, it is still a public highway.   A turnpike road can only be constructed and operated under authority of law, and when used by the public it becomes a public highway.   The purpose and object of a turnpike is merely to provide a public highway of a better quality than would be furnished by an ordinary county road, and it is maintained by tolls instead of by public taxes.   It is not in any sense a private road or way; it could not be closed by the stockholders or corporation against the public use; it is constructed under or

by virtue of public authority for the use of every person who desires to pass over it, on the payment of the toll established by law, and its use is common to all who comply with the law. The easement enjoyed by the public in a turnpike road is vested in the public as much as that of a common highway. If for any reason the turnpike should be abandoned as such it would still remain a public highway. *P., McK. & Y. Rd. Co.* v. *Commonwealth,* 104 Pa. St., 583; *State* v. *Maine,* 27 Conn., 641; *People* v. *Davidson,* 79 Cal., 166; *Comrs. of Cuyahoga County* v. *State Road Plank Rd. Co.,* 1 N. P., N. S., 143 (affirmed, 67 Ohio St., 554); *Chagrin Falls & Cleve. Plank-road Co.* v. *Cane et al.,* 2 Ohio St., 419.

Some question is raised in the brief of the defendant in error as to the sanity of John Morten at the time of the making of this plat and deeds, but the only evidence on this subject shown in the record is on page 156, where his daughter made the statement, in answer to a question as to how her father felt about this road going through this farm: "Well, it worried his mind so that he was obliged to go to the insane asylum." This testimony is certainly not sufficient proof that the grantor in the deed under which she claimed title and under which plaintiff in error holds, was, at the time of its execution *non compos* to such an extent that it would invalidate the deed or the plat which he adopted in the making of that deed; and plaintiff below, as the grantee of her mother's deed, which described the premises conveyed to her as bounded by the center line of Linwood road, was

bound to take notice of the existence of that high-
way and is chargeable with knowledge of its loca-
tion.  *Seegar* v. *Harrison,* 25 Ohio St., 14.

Plaintiff below, however, claimed that the high-
way which existed along the eastern boundary of
her property was limited to the portion actually
used, and that she was the owner of the 23/100
acre described in the petition which lay between
the line of her fence and the west line of Linwood
road to a width of 60 feet as improved by the city.

It is well settled in Ohio that an abutting prop-
erty owner can acquire no right in a public highway
by encroachment or occupation, however long con-
tinued, where such encroachment or occupation is
of a temporary character, such as fences, walls,
shrubbery, etc., and is upon that part of a street
not then required for public use.  *Lane* v. *Kennedy
et al.,* 13 Ohio St., 42; *McClelland* v. *Miller,* 28
Ohio St., 488; *Little Miami Rd. Co.* v. *Comrs. of
Greene Co.,* 31 Ohio St., 338; *Lawrence Rd. Co.*
v. *Comrs. of Mahoning Co.,* 35 Ohio St., 1; *Hed-
dleston, Supervisor,* v. *Hendricks,* 52 Ohio St., 460;
*Lake Shore & Michigan Southern Ry. Co.* v. *City
of Elyria,* 69 Ohio St., 414.

The deed under which plaintiff below held title
fixed the center of this road as but 1 foot from her
fence.   It was conceded by her that the road was
at least 40 feet wide.   She therefore could make no
claim that the entire 23/100 acre was her property
from occupation, being simply enclosed by a fence
for a dooryard of her residence.   It is true the
width of the road is not shown on the plat in figures,
but as the plat was drawn to a scale it could be

ascertained as accurately as though marked in figures, and the plat has thus fixed the width. *Zeller* v. *Littell,* 58 Atl. Rep., 377.

Where a plat thus fixes the width of a highway, and the public uses only so much of it as might be necessary for the public travel at that time, its use will be held an acceptance of the street to its entire width fixed by dedication. This law is well stated in 13 Cyc., 488, as follows:

"If a street is dedicated by the platting of land into blocks and lots intersected by streets and the sale of lots with reference to the plat, the width of the street is that fixed by the plat or map, and the failure to open and improve the street for its whole width does not operate as an abandonment of the part not opened and improved. So if a highway of a definite width has been commenced by an actual and recorded location by proceedings not strictly conformable to law the public after twenty years' user is entitled to a way of the width originally laid out, although the part traveled during that time may not have been so wide, and where a public street becomes such by dedication followed by an acceptance by use, the location of the street as delineated by the stakes which were set in the act of dedication according to which the street was opened and used determines the lines of the dedication." *Lins* v. *Seefeld,* 126 Wis., 610, 614; *So. Pac. Rd. Co.* v. *Ferris,* 93 Cal., 263, 264; *Commonwealth* v. *Shoemaker,* 14 Pa. Super. Ct., 194.

We therefore conclude that Linwood road was a dedicated highway within the lines to which the

city made its improvement, and plaintiff below failed to sustain her first cause of action against the city, and the court below erred in not, upon its motion, withdrawing the case from the jury and entering a judgment for defendant.

As the record fails to show that any claim was filed for damages by reason of change of grade in the improvement of Linwood road, as required by Section 3823 of the General Code, the action of the court below was correct in withdrawing the second cause of action from the jury and entering judg‑ ment thereon for defendant.

The judgment below will therefore be reversed as to the first cause of action, and sustained as to the second cause of action, and final judgment will be entered for plaintiff in error.

*Judgment for plaintiff in error.*

*Mr. Walter M. Schoenle,* city solicitor; *Mr. Frank K. Bowman,* assistant city solicitor; *Mr. Alfred Bettman* and *Mr. O. S. Bryant,* for plaintiff in error.

*Mr. C. Hammond Avery* and *Mr. Julius G. Penn,* for defendant in error.