NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 4, 2024

S23G1146.  NORTH AMERICAN SENIOR BENEFITS, LLC v. WIMMER et al.

BETHEL, Justice.

The Georgia Restrictive Covenants Act (the "GRCA"), OCGA § 13-8-50 et seq., governs the enforceability of restrictive covenants in Georgia. The GRCA authorizes the "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities." OCGA § 13-8-53 (a). In this case, we focus on the requirement of geographic reasonableness. The petitioner — a Georgia corporation seeking to enforce a restrictive covenant against two former employees — asks us to review the conclusion reached by the Court of Appeals that, to be deemed geographically reasonable under OCGA § 13-8-53 (a), a restrictive

covenant must contain an express geographic term. In light of the statutory text and context of the GRCA, we conclude that the Court of Appeals erred, so we reverse and remand this case for further proceedings.

1. *Facts and Procedural History*

In 2018, North American Senior Benefits, LLC ("NASB"), an insurance marketing organization that contracts with independent insurance agents, entered into employment contracts with Ryan and Alisha Wimmer that each contained an identical restrictive covenant prohibiting the Wimmers from, among other things, hiring or otherwise interfering with the ongoing employment relationship of any of NASB's employees for two years following the termination of the Wimmers' employment relationship with NASB (the "non-recruitment provision").[1] The Wimmers and NASB severed ties in

---

[1] Specifically, the non-recruitment provision prohibited the Wimmers from "directly or indirectly" engaging in the following activities:

(a) solicit[ing] for the provision [of] services or employment any employee, agent or independent contractor of NASB, (b) advis[ing] or recommend[ing] to any other person that they employ or solicit for provision of services any employee or independent contractor

2021. Asserting that the Wimmers had established a competing business that violated the provisions of the restrictive covenant, NASB filed suit against them to enforce the restrictive covenant, including the non-recruitment provision. The non-recruitment provision, however, does not contain an express description of the geographic area in which the provision applies, an omission the Wimmers argue dooms NASB's claims. The Statewide Business Court agreed and granted in part the Wimmers' motion for judgment on the pleadings on this basis.

The Court of Appeals affirmed, concluding that, in order to be deemed reasonable under OCGA § 13-8-53 (a), a restrictive covenant must include an express geographic term, though one judge dissented.[2] See *N. American Senior Benefits v. Wimmer*, 368 Ga.

---

for NASB, (c) encourag[ing] or advis[ing] such employees, agents or independent contractors to sever, discontinue or not renew any agreement or relationship to NASB, or (d) otherwise establish[ing] or seek[ing] to establish any business relationship with any such employee, agent or independent contractor relating to the sale of insurance products.

[2] The non-recruitment provision also applied to the Wimmers' conduct before the termination of their employment contracts with NASB, and NASB alleges that the Wimmers' conduct during their employment violated the non-

3

App. 124 (889 SE2d 361) (2023); id. at 133 (Markle, J., dissenting). In reaching this conclusion, the *Wimmer* majority looked to the Court of Appeals' prior decision in *CarpetCare Multiservices v. Carle*, 347 Ga. App. 497 (819 SE2d 894) (2018),[3] which held that a restrictive covenant must contain an express geographic term in order to comply with OCGA § 13-8-53 (a). See *Wimmer*, 368 Ga. App. at 127 (2). Finding *CarpetCare*'s reasoning "persuasive," the *Wimmer* majority adopted its holding. Id. at 128 (2).

---

recruitment provision. However, the Business Court and the Court of Appeals both limited their analysis of the non-recruitment provision's enforceability to the Wimmers' conduct *after* the termination of their contracts. Our analysis is likewise so limited.

We further note that the Business Court granted the Wimmers' requests for a declaratory judgment that the non-recruitment provision was unenforceable as to the Wimmers' post-termination conduct and a permanent injunction precluding NASB from attempting to enforce the non-recruitment provision as to post-termination conduct. The non-recruitment provision's two-year term expired in June 2023, however, so any issue regarding the propriety of declaratory relief or the injunction is now moot. See *Babies Right Start v. Ga. Dept. of Public Health*, 293 Ga. 553, 555 (2) (a) (748 SE2d 404) (2013); *Holton v. Physician Oncology Servs.*, 292 Ga. 864, 866 (1) (742 SE2d 702) (2013).

[3] The *Wimmer* majority considered *CarpetCare* not binding under the Court of Appeals' own rules. See Court of Appeals Rule 33.2 (a) (2) (for appeals decided by a division of the Court of Appeals prior to August 1, 2020, "[a]n opinion is physical precedent only (citable as persuasive, but not binding, authority) . . . with respect to any portion of the published opinion in which any of the panel judges . . . dissent").

4

*CarpetCare* concerned the enforceability of a restrictive covenant against a former independent contractor. The geographic scope of the restrictive covenant in that case, like the one at issue here, was not stated in express terms. Instead, the covenant prohibited the contractor, for a period of one year after the termination of his employment relationship with CarpetCare, from "provid[ing] any service identified [by the covenant] to any customer with whom [the independent contractor] had any contact during the term of his employment." *CarpetCare*, 347 Ga. App. at 97-98. The trial court found that the restrictive covenant was "void and unenforceable because it did not contain a geographic limitation as required by OCGA § 13-8-53 (a)." Id. at 97. The sole issue on appeal was whether the trial court erred by reaching that determination. Id.

In affirming the trial court's judgment, the *CarpetCare* panel majority narrowly focused its analysis on the phrase "geographic area," which appears in subsections (a), (b), (c), and (e) of the statute.

5

Pointing to subsection (b),[4] which is applicable only to customer non-solicitation provisions, the *CarpetCare* majority observed that subsection (b) states that "[n]o express reference to geographic area . . . shall be required" for the restraint to be enforceable. *CarpetCare*, 347 Ga. App. at 498. But, the panel majority noted, the parties agreed that the restrictive covenant was not a non-solicitation provision and, thus, was governed by subsection (a), not subsection (b). Id. As to subsection (a), the *CarpetCare* majority noted the absence of any similar language foreclosing a requirement of an express geographic reference. Finding that distinction between subsections (a) and (b) dispositive of the issue on appeal, the *CarpetCare* majority concluded that a "non-compete covenant [that]

---

[4] OCGA § 13-8-53 (b) states in relevant part:
[A]n employee may agree in writing for the benefit of an employer to refrain, for a stated period of time following termination, from soliciting, or attempting to solicit, directly or by assisting others, any business from any of such employer's customers, including actively seeking prospective customers, with whom the employee had material contact during his or her employment for purposes of providing products or services that are competitive with those provided by the employer's business. No express reference to geographic area or the types of products or services considered to be competitive shall be required in order for the restraint to be enforceable.

6

did not contain any reference to a geographic area limitation . . . failed to comply with OCGA § 13-8-53 (a), and, thus, . . . was void and unenforceable." Id. at 499-500. In other words, the *CarpetCare* majority reasoned that, because subsection (b) expressly authorizes enforcement of customer non-solicitation provisions that do not contain an "express reference to geographic area," subsection (a) must implicitly forbid enforcement of all other restrictive covenants in the event they lack such a delineation.

In adopting *CarpetCare*'s holding, the *Wimmer* majority also sought to bolster its analysis by pointing to other provisions of the GRCA as well as decisions of federal district courts in Georgia that it said supported reading into subsection (a) a requirement for an express geographic term. See *Wimmer*, 368 Ga. App. at 128-129 (2). In rejecting this conclusion, the *Wimmer* dissent first noted that pre-GRCA decisional law "frequently upheld non-recruitment provisions that did not include an express geographic limitation," recognizing that "in the context of employee-poaching . . . it matters not whether one's employee is hired away to work across the street or across the

7

globe — the harm to the employer is the same." Id. at 134-135 (Markle, J., dissenting) (citation and punctuation omitted). In the dissenting opinion's view, the GRCA reflects this rationale, providing in OCGA § 13-8-53 (c) (1) that "[w]henever a description of . . . geographic areas is required . . . *any description* that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement." *Wimmer*, 368 Ga. App. at 135 (Markle, J., dissenting) (emphasis in original). And the dissenting opinion concluded that the non-recruitment provision here satisfies that requirement and is enforceable. Id. at 135. Thereafter, we granted NASB's petition for a writ of certiorari to determine whether the Court of Appeals properly construed OCGA § 13-8-53 (a).

2. *Analysis*

Our review of this issue of statutory construction — a question of law — is de novo. See *Junior v. Graham*, 313 Ga. 420, 423 (2) (870 SE2d 378) (2022). In our search for statutory meaning, "we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable

way." *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023) (citation and punctuation omitted). And though our focus here is on the meaning of OCGA § 13-8-53 (a), "[w]e do not limit our consideration to the words of [that subsection] alone." *West v. City of Albany*, 300 Ga. 743, 745 (797 SE2d 809) (2017) (citation and punctuation omitted). Instead, we apply the "basic rule of construction that a statute should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." *McIver v. State*, 314 Ga. 109, 120 (2) (b) (875 SE2d 810) (2022) (citation and punctuation omitted).

This case turns on the meaning of the first sentence of OCGA § 13-8-53 (a), which provides that "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities, shall be permitted." In construing this text, the Court of Appeals, both in *CarpetCare* and in *Wimmer*, centered its analysis on the narrow phrase "geographic area" but

9

looked elsewhere in the GRCA to conclude that the inclusion of that phrase in subsection (a) requires that all restrictive covenants contain an express geographic term.[5] However, as we have explained before, statutory text is not properly read in a vacuum but, instead, must be considered in light of the surrounding text and the statute's broader context because "context is a primary determinant of meaning." *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) (citation and punctuation omitted). See also *Duke v. State*, 311 Ga. 135, 140 (2) (a) (856 SE2d 25) (2021) ("[W]e must consider the meaning of [a] phrase [contained in a statute] in conjunction with

---

[5] In its analysis, the *CarpetCare* majority appears to operate under the implicit assumption that restrictive covenants must comply with *either* subsection (a) or subsection (b), see *CarpetCare*, 347 Ga. App. at 498, an assumption the *Wimmer* majority echoes, see *Wimmer*, 368 Ga. App. at 127 (2). Both the Business Court and the Wimmers likewise appear to subscribe to this view of OCGA § 13-8-53. Subsection (b) inarguably does not apply to the restrictive covenant at issue in this case, so we need not address the interplay between subsections (a) and (b) to resolve this appeal. We are nevertheless dubious that subsection (a)'s reasonableness standard does not apply to all restrictive covenants, particularly in light of the settled principle that only reasonable restrictive covenants are enforceable in Georgia. See generally *Motorsports of Conyers v. Burbach*, 317 Ga. 206, 211-212 (2) (b) (892 SE2d 719) (2023) ("[I]n Georgia, the line between unreasonable restrictive covenants and reasonable ones has long been drawn by public policy: unreasonable restrictive covenants are contracts in general restraint of trade that are against public policy, while reasonable restrictive covenants are valid and enforceable.").

10

the rest of the sentence" in which it appears.); *Cook*, 317 Ga. at 660 (1) ("For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (citation and punctuation omitted)). Considering both the statutory text and context, we conclude that the Court of Appeals erred in its construction of subsection (a).

We turn first to subsection (a)'s plain text, which, as always, must be the north star of our analysis. Read as a whole, subsection (a) establishes a general standard of enforceability for "contracts that restrict competition during the term of a restrictive covenant" and specifically requires that "such restrictions" be "reasonable in time, geographic area, and scope of prohibited activities." From the use of the conjunctive "and," it is clear that a restrictive covenant must comply with all three statutory bases in order to be enforceable. See *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891 (1) (792 SE2d 680) (2016). As to geographic reasonableness in

particular, nothing in the text of subsection (a) mandates that a restrictive covenant contain an explicit geographic term, nor does subsection (a) prohibit a covenant's geographic area from being expressed in implied terms. In short, the plain text of subsection (a) requires with respect to geographic restrictions on competition that any such restriction be reasonable, regardless of whether the restriction is expressly stated or implied. To conclude otherwise would require us to read into subsection (a) language that the legislature did not include. See *West*, 300 Ga. at 746 (2017) ("The General Assembly did not draft the language of the statute in this manner, and we will not construe the statute as if it did."); *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and *said what it meant.*" (emphasis supplied; citation and punctuation omitted)).

Several contextual considerations underscore this conclusion. First, other provisions of the GRCA separately address how restrictions contained in restrictive covenants should be described.

Specifically, OCGA § 13-8-53 (c)[6] sets forth guidelines for descriptions contained in restrictive covenants, stating that the description must provide "fair notice of the maximum reasonable scope of the restraint," even if the description "is generalized or could possibly be stated more narrowly to exclude extraneous matters." OCGA § 13-8-53 (c) (1) (emphasis supplied). Subsection (c) goes on to establish standards for determining whether "activities,

---

[6] Subsection (c) provides in relevant part:
(1) Activities, products, or services that are competitive with the activities, products, or services of an employer shall include activities, products, or services that are the same as or similar to the activities, products, or services of the employer. Whenever a description of activities, products, or services, or geographic areas, is required by this Code section, any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement, even if the description is generalized or could possibly be stated more narrowly to exclude extraneous matters. . . .
(2) Activities, products, or services shall be considered sufficiently described if a reference to the activities, products, or services is provided and qualified by the phrase "of the type conducted, authorized, offered, or provided within two years prior to termination" or similar language containing the same or a lesser time period. The phrase "the territory where the employee is working at the time of termination" or similar language shall be considered sufficient as a description of geographic areas if the person or entity bound by the restraint can reasonably determine the maximum reasonable scope of the restraint at the time of termination.

products, or services" or "geographic areas" are "sufficiently described," providing exemplar phrasing while also indicating that "similar language" may be sufficient. See OCGA § 13-8-53 (c) (2). Importantly, the statute is clear that a "description" of a restrictive covenant's "geographic area" is not always required. Subsection (c)'s guidelines apply "[w]henever a description of activities, products, or services, or geographic areas is required by this Code section."[7] Thus, by referring to a subset of circumstances in which a description of geographic area is required, the statute necessarily implies that there are times when one is not required. By construing

---

[7] Echoing the reasoning of the majority opinion below, the Wimmers assert that the inclusion of this language in subsection (c) necessarily means that subsection (a) mandates a geographic description in all cases. See *Wimmer*, 368 Ga. App. at 128 (2) ("Paragraph (c) (1) must be read to indicate that a description of geographic areas is required of restrictive covenants governed by OCGA § 13-8-53 (a)."). As we have already discussed, however, subsection (a), by its plain language, imposes no such requirement, and we cannot read into subsection (a) language that is not there, regardless of what another subsection of the statute might imply. It may be that subsection (c) prompts the question of when a description is "required by this Code section." But that is not the question at hand. Instead, this case is before us on certiorari on the limited question of whether subsection *(a)* imposes a requirement for an express geographic term. It does not. And while the provisions of statutes are always read in context and concert, we do not read the provisions of subsection (c) as creating a requirement in the silence of subsection (a).

14

subsection (a) to require an express geographic description in all circumstances, the Court of Appeals imposed a stricter standard than that imposed both by the plain text of subsection (a) and in the context of subsection (c).

Looking to the broader statutory context, the GRCA plainly contemplates that a restrictive covenant's geographic scope can be described in ways that do not involve geographic terms. For example, under OCGA § 13-8-56 (2), the geographic scope of a restrictive covenant is presumed reasonable if, among other things, it "includes the areas in which the employer does business at any time during the parties' relationship" and "contains a list of particular competitors as prohibited employers for a limited period of time." The restrictive covenant here does something similar. Instead of listing employers that the Wimmers may not work for, it names the employer — NASB — that the Wimmers may not recruit employees from, and it confines that restriction to a limited period of time — two years — after the employment relationship between NASB and the Wimmers ended. It would be oddly incongruous to

15

conclude that the non-recruitment provision, though stated in similarly narrow terms as covenants deemed presumptively reasonable in geographic area under OCGA § 13-8-56, is categorically unreasonable because it lacks an express geographic term.

Our reading of OCGA § 13-8-53 (a) likewise comports with the GRCA's "more permissive and flexible approach to restrictive covenants." *Motorsports of Conyers v. Burbach*, 317 Ga. 206, 214 (2) (c) (ii) (892 SE2d 719) (2023). See also *Mullally v. CU Capital Market Solutions, LLC*, 368 Ga. App. 602, 606 (2) (890 SE2d 494) (2023) (observing that "the authority and latitude given to the courts to interpret and modify restrictive covenants so that they conform both to the will of the parties and the strictures of the GRCA rebut any notion that an imprecise or imperfectly drafted restrictive covenant — such as the ones here — is perforce invalid"). And our rejection of the requirement read into the statute by the Court of Appeals is consistent with the GRCA's stated purpose "to provide statutory guidance so that all parties to [restrictive covenants] may be certain

16

of the validity and enforceability of such provisions and may know their rights and duties according to such provisions." OCGA § 13-8-50.

Finally, our reading of the statute accords with the decisional law that is the backdrop of the GRCA, pursuant to which a restrictive covenant's reasonableness was assessed in light of its duration, territorial coverage, and scope of activity and which recognized that "[r]equiring an express geographic territorial description in all cases is not in keeping with the reality of the modern business world in which an employee's 'territory' knows no geographic bounds." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 467 (2) (422 SE2d 529) (1992). See also *Motorsports of Conyers*, 317 Ga. at 206-207 (noting that ("[o]ur decisional law has long distinguished between restrictive covenants that are reasonable (in scope, duration, and geographic reach) and those that are unreasonable"); *May*, 295 Ga. at 397 ("The General Assembly properly can, of course, enact legislation that departs from the common law, but to the extent that statutory text can be as reasonably understood to

17

conform to the common law as to depart from it, the courts usually presume that the legislature meant to adhere to the common law. . . . [S]tatutes will not be interpreted as changing the common law unless they effect the change with clarity." (citations and punctuation omitted)).

Of course, by omitting any express geographic description entirely, the implied provision in question here could be read in one of two ways. NASB suggests that, because it is an employee non-recruitment provision, it should be considered to have a geographic scope aligned with the current homes and places of employment of the covered employees. Alternatively, the absence of any described geographic boundary could be understood to give the provision global or universal effect with respect to geographic application. This sort of distinction is irrelevant because, in any event, the analysis remains the same under OCGA § 13-8-53 (a). The trial court must assess whether the provision's geographic scope is reasonable in light of the totality of the circumstances including, but not limited to, the total geographic area encompassed by the provision, the

18

business interests justifying the restrictive covenant, the nature of the business involved, and the time and scope limitations of the covenant. See OCGA § 13-8-55 ("The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant."); *Mouyal*, 262 Ga. at 466 (2) (at common law, "the reasonableness of the [territorial] restriction is more dependent upon the facts and circumstances of the case than on the geographic size of the territory"). And here, that question boils down to whether, in light of all the circumstances, it was reasonable to prohibit the Wimmers from recruiting for employment any NASB employee regardless of the employee's location for the term of the covenant.

In sum, OCGA § 13-8-53 (a) means what it says — to be enforceable, a restrictive covenant must be "reasonable in time geographic area, and scope of prohibited activities." Whether a given covenant is reasonable in geographic area under subsection (a) is not dependent on whether its geographic scope is expressly stated but, rather, on the facts and circumstances of the case, as measured by

19

the requirements of the GRCA. Accordingly, we reverse the judgment below and remand this case to the Court of Appeals. On remand, the Court of Appeals is directed to reverse the Business Court's judgment and remand the case to that court, so that it may in the first instance assess whether the restrictions of the non-recruitment provision are "reasonable" under subsection (a).[8]

*Judgment reversed and case remanded. All the Justices concur.*

---

[8] To the extent *CarpetCare*, 347 Ga. App. at 497-500, is inconsistent with this opinion, we hereby disapprove it.