**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 2, 2025**

# In the Court of Appeals of Georgia

A25A0184. FDOV, LLC v. EADDY et al.

BROWN, Judge.

FDOV, LLC, the owner of a Family Dollar store, appeals from the trial court's order granting partial summary judgment in favor of OOIDA Risk Retention Group, Inc. ("the insurer") with regard to its liability for a penalty and attorney fees under OCGA § 33-4-7 (a). FDOV contends that the trial court erred by rejecting its assertion that the insurer failed to make a good faith effort to settle its third-party property damage claim after its building was damaged by the driver of a tractor trailer covered by the insurer. For the reasons explained below, we disagree and affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review

a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). So viewed, the record shows that the managing member ("the manager") of FDOV learned about damage to the Family Dollar store on March 29, 2010, and reported it to the insurer by telephone the following day. On March 31, 2010, he sent to the insurer a copy of the police report, a quote for repairs in the amount of $8,400, and photographs of the damage. On the same day, he advised the insurer that repairs would begin on April 5, 2010. On April 13, 2010, the repairs were completed, and the manager notified the insurer by telephone and requested reimbursement. On April 24, 2010, the manager sent an e-mail to the insurer requesting full reimbursement of the repairs by April 31, so that the insurer could avoid legal costs. On April 28, 2010, a claims representative for the insurer faxed a letter in reply stating that it was in the process of completing its investigation and requested color photos of the completed repairs and an invoice showing parts and labor costs for the completed repair.

On May 21, FDOV's attorney sent a letter by regular mail and fax demanding payment of $8,400 by May 31, 2010. The insurer responded on June 16, 2010, stated

that it was "not questioning liability or responsibility for the damages caused by our insured," and requested the same photos and detailed invoice previously requested. FDOV's attorney provided the requested information by e-mail on June 29, 2010, and requested funds by July 7, 2010.

On July 8, 2010, the insurer offered $6,000 to settle the property damage claim, justifying the reduced amount on preexisting damage to the areas repaired. After several phone calls with FDOV's attorney, the insurer agreed on July 22, 2010, to pay the full amount of $8,400 and sent a release the following day. This release included a provision requiring FDOV and its attorney to indemnify the released parties. On July 23, 2010, FDOV's attorney wrote the insurer that he had "relayed your offer to pay $8,400 . . . on a full release. Once I hear back on whether FDOV will accept, I will let you know."

On August 9, 2010, FDOV's attorney sent a certified letter to the insurer "pursuant to OCGA § 33-4-7" offering to settle for $8,400. The letter specified that the check should be made payable to the law firm "as attorneys for FDOV" and that the funds would be held in escrow until FDOV executed and forwarded a release enclosed with the letter. This release differed from the one provided by the insurer

3

and did not include a hold harmless and indemnity agreement. The insurer received the letter on August 12, 2010.

After further discussions between FDOV's attorney and the insurer about terms of the release, the insurer issued a check to FDOV on October 12, 2010, and sent a letter enclosing the same release it first sent to counsel, stating that it was "unable to issue settlement without properly signed and notarized forms." On November 19, 2010, counsel advised the insurer that FDOV was rejecting the insurer's "counteroffer to settle this claim[,]" returned the check to the insurer, and enclosed a copy of the complaint it had filed the same day.[1]

The record before us does not include all of the documents filed after FDOV filed its complaint as FDOV opted to omit numerous documents in its notice of appeal. From the list of omitted documents, it appears the parties agreed to extend discovery in this case numerous times between the years 2011 and 2022. On December 4, 2023, the parties entered into a "Stipulation of Judgment as to Property Damages Award" in which they agreed "that the property damages . . . awarded to FDOV due

---

[1] FDOV also named the driver and his employer as defendants in its complaint, alleging that the driver negligently backed a tractor-trailer truck into the store causing physical damage.

to [the tractor-trailer driver's] negligence are $8,400, payable now and need not be proven at trial. . . ." In March 2024, the insurer moved for summary judgment on FDOV's claims under OCGA § 33-4-7 and OCGA § 13-6-11. The trial court granted the motion only as to OCGA § 33-4-7, and FDOV filed a timely notice of appeal.

OCGA § 33-4-7 (a) outlines an insurer's duty "[i]n the event of a loss because of injury to or destruction of property covered by motor vehicle liability insurance" as follows:

> [T]he insurer . . . has an affirmative duty to adjust that loss fairly and promptly, to make a reasonable effort to investigate and evaluate the claim, and, where liability is reasonably clear, to make a good faith effort to settle with the claimant potentially entitled to recover against the insured under such policy. Any insurer who breaches this duty may be liable to pay the claimant, in addition to the loss, not more than 50 percent of the liability of the insured for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action.

OCGA § 33-4-7 (b) provides:

> An insurer breaches the duty of subsection (a) of this Code section when, after investigation of the claim, liability has become reasonably clear and the insurer in bad faith offers less than the amount reasonably owed under all the circumstances of which the insurer is aware.

5

OCGA § 33-4-7 (c) outlines the following procedural requirements for recovery:

> A claimant shall be entitled to recover under subsection (a) of this Code section if the claimant or the claimant's attorney has delivered to the insurer a demand letter, by statutory overnight delivery or certified mail, return receipt requested, offering to settle for an amount certain; the insurer has refused or declined to do so within 60 days of receipt of such demand, thereby compelling the claimant to institute or continue suit to recover; and the claimant ultimately recovers an amount equal to or in excess of the claimant's demand.

A claimant may serve the insurer at the expiration of the 60-day period specified in OCGA § 33-4-7 (c), and "[t]he action for bad faith shall not be abated by payment after the 60 day period. . . ." OCGA § 33-4-7 (d) and (e).   Once a claimant obtains "a verdict resulting in a recovery equal to or in excess of the claimant's demand[, . . . ] the trial shall be recommenced in order for the trier of fact to receive evidence to make a determination as to whether bad faith existed in the handling or adjustment of the attempted settlement of the claim or action in question." OCGA § 33-4-7 (d)

The parties disagree about how these Code provisions should be interpreted. The insurer asserts that it cannot be held liable under the statute because it offered the amount demanded within 60 days of receipt of the certified letter. FDOV contends

that the insurer had an affirmative duty to make a good faith effort to settle and had no lawful right to condition payment on execution of a general release with a hold harmless and indemnity provision. In order to resolve this dispute, we must examine the relevant rules of statutory interpretation.

"In our search for statutory meaning, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." (Citation and punctuation omitted) *North American Senior Benefits v. Wimmer*, 319 Ga. 641, 644 (2) (906 SE2d 373) (2024). "In considering the meaning of a statutory provision, we should not read it in isolation from the other statutory provisions of which it is a part." *Roberts v. Unison Behavioral Health*, 312 Ga. 438, 444 (2) (c) (863 SE2d 99) (2021). "If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (Citation and punctuation omitted.) *Major v. State*, 301 Ga. 147, 150 (1) (800 SE2d 348) (2017). In such a circumstance, "judicial construction is not only unnecessary but forbidden." (Citation and punctuation omitted.) *Southern States Chemical v. Tampa Tank & Welding*, 316 Ga. 701, 713 (2) (888 SE2d 553) (2023).

OCGA § 33-4-7 (b) states that an insurer breaches "the duty of subsection (a) . . . when, after investigation of the claim, liability has become reasonably clear and the insurer in bad faith *offers less than the amount reasonably owed* under all the circumstances of which the insurer is aware." (Emphasis supplied.) Under this plain language, an insurer breaches the statute when it offers less than the amount reasonably owed in bad faith. Subsection (c) similarly predicates recovery on an insurer's refusal or failure to settle for an amount certain within 60 days of receipt of an "offer[ ] to settle for an amount certain."

Having considered the plain language of the OCGA § 33-4-7, the context in which it appears, and reading it in its most natural and ordinary way, we conclude that FDOV cannot recover from the insurer because the insurer offered to settle for the amount demanded by FDOV within 60 days of receiving FDOV's demand. Cf. *King v. Atlanta Cas. Ins. Co.*, 279 Ga. App. 554, 556 (1) (631 SE2d 786) (2006) ("an insurer breaches its duty under OCGA § 33-4-7 (a) only when, after investigation of the claim, liability has become reasonably clear and the insurer in bad faith offers less than the amount reasonably owed under all the circumstances of which the insurer is aware. OCGA § 33-4-7 (b)") (punctuation omitted). Accordingly, we affirm the trial court's

grant of summary judgment in favor of the insurer. In so holding, we reject FDOV's invitation to judicially craft a requirement that an offer of payment "must be unqualified, and if there is a qualification for payment, an insurer risks imposition of bad faith penalties upon the offer's rejection should the rejection be found unreasonable."

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*