**THIRD DIVISION
DOYLE, P. J.,
MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 27, 2025**

# In the Court of Appeals of Georgia

A25A1333. FALCON RIDGE, INC. v. LEON.

MARKLE, Judge.

In this action for breach of an employment agreement, Falcon Ridge, Inc. ("FRI") appeals from the trial court's order granting summary judgment to Michael Leon. On appeal, FRI contends that the trial court erred in determining that the restrictive covenants in the employment agreement between FRI and Leon were unenforceable as a matter of law, and refusing to blue pencil the covenants so as to render them enforceable. For the reasons that follow, we reverse the trial court's order, and remand the case to the trial court for further proceedings consistent with this opinion.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

> A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Crouch v. Bent Tree Community*, 310 Ga. App. 319 (713 SE2d 402) (2011). And "[t]he enforceability of a restrictive covenant is a question of law that we . . . review de novo." *American Anesthesiology of Ga. v. Northside Hosp.*, 362 Ga. App. 350, 354 (867 SE2d 531) (2021).

So viewed, the undisputed facts in the record show that FRI is a horse boarding stable in Woodstock, Georgia that offers riding instruction and training. In June 2017, FRI hired Leon as an independent contractor to provide equestrian riding and training services, and they signed an employment agreement that contained non-solicitation and non-compete clauses. Specifically, paragraph 1 of the agreement (the non-solicitation clause) provides:

> During the period commencing on the date hereof and ending 2 years after the termination of the General Contractor's employment by Employer for any reason, the General Contractor shall not directly or indirectly induce or attempt to induce any of the employees or anyone employed in any capacity by Employer to leave the employ of Employer, or solicit the business of any client or customer of Employer or any consultant to Employer.

Paragraph 2 of the agreement (the non-compete clause) provides:

During the period commencing on the date hereof, and ending 2 years after the termination of the General Contractor's employment for any reason, the General Contractor shall not engage in, or own or control an interest in, or act as principal, director or officer of, or consultant to, any firm or corporation (i) engaged in a venture or business substantially similar to that of the Employer or (ii) which is in direct or indirect competition with the Employer within a geographic radius of 25 miles from [FRI].

FRI terminated Leon's employment in November 2017. Thereafter, Leon began working for two horse stables located in Alpharetta, Georgia that were substantially similar to that of FRI.

FRI sued Leon, asserting claims of breach of contract for violating both the non-solicitation and the non-compete clauses by soliciting "current and former clients, customers, and employees of [FRI] in an effort to carry this business to his new employer," and by working at FRI's competitors within 25 miles of FRI.[1] Leon moved for summary judgment, arguing that there was no consideration for the restrictive covenants; the Statute of Frauds prohibits the introduction of parol evidence to supply

---

[1] FRI initially filed a complaint for interlocutory and permanent injunctive relief to enforce the restrictive covenants, but FRI's request for injunctive relief became moot when the restrictive covenants expired. FRI then filed an amended complaint, which is at issue here.

that essential contract term; and he is not the kind of employee covered by OCGA § 13-8-53 (a) (1)-(4).

At a hearing on the motion for summary judgment, the trial court asked the parties whether the non-solicitation clause is required to be limited in geographic area, and whether the non-compete clause sufficiently detailed the prohibited activities post-termination. After the hearing and post-hearing briefing, the trial court granted summary judgment to Leon. Relying on *North American Senior Benefits v. Wimmer*, 368 Ga. App. 124, 128-131 (2) (889 SE2d 361) (2023), in which we held that a restrictive covenant must include an express geographic term in order to be deemed reasonable under OCGA § 13-8-53 (a), the trial court concluded that the non-solicitation clause was unenforceable as a matter of law because it did not contain an explicit geographic limitation. While it found the geographic limitation of 25 miles in the non-compete clause to be reasonable, the court determined that clause was unenforceable because it was overbroad. The trial court then found that it could not exercise its discretion to blue-pencil the non-compete clause because to do so would render the clause

meaningless, and it also refused to blue-pencil the non-solicitation clause.[2] This appeal followed.

1. FRI argues that the trial court erred in determining that the non-solicitation clause was unenforceable as a matter of law because it does not include a geographic limitation. We agree.

The Georgia Restrictive Covenants Act ("GRCA"), enacted in 2011, recognizes that "reasonable restrictive covenants" may serve legitimate business interests. OCGA § 13-8-50; see also *Motorsports of Conyers v. Burbach*, 317 Ga. 206, 215 (2) (c) (ii) (892 SE2d 719) (2023) (discussing the GRCA's "more permissive scheme for construing and enforcing restrictive covenants," compared to prior decisional law). Additionally, by enacting the GRCA, "the General Assembly desire[d] to provide statutory guidance so that all parties to such agreements may be certain of the

---

[2] Regarding Leon's claim that there was no consideration for the restrictive covenants, the trial court concluded that part performance "was sufficient to create a factual issue to remove the case from the Statute of Frauds and allow parol evidence to supply missing contract terms[.]" The court further concluded that there were genuine issues of material fact as to whether Leon was a key employee for purposes of the enforceability of the non-compete clause. See OCGA § 13-8-53 (a). The parties do not challenge these findings on appeal.

validity and enforceability of such provisions and may know their rights and duties according to such provisions." OCGA § 13-8-50. Thus, the GRCA requires a court's construction of a restrictive covenant "to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." OCGA § 13-8-54 (a).

Pursuant to the GRCA, restrictive covenants in employment contracts are permitted and enforceable if they are reasonable in time, geographic area, and scope of prohibited activities. OCGA § 13-8-53 (a); see also *Kennedy v. Shave Barber Co.*, 348 Ga. App. 298, 302 (1) (a) (822 SE2d 606) (2018). Here, the trial court held that the non-solicitation clause was unenforceable solely because it lacked a geographic area. There are two different restrictions in the non-solicitation clause: non-recruitment of employees and non-solicitation of customers. We address each in turn.[3]

---

[3] In finding both provisions of the non-solicitation clause unenforceable for failure to include a geographic area, the trial court based its holding on *Wimmer*. However, that case only dealt with a non-recruitment provision. *Wimmer*, 368 Ga. App. at 126-131 (2). The restrictive covenant in Wimmer prohibited the former employees from, among other things, hiring or otherwise interfering with the ongoing employment relationship of any of the employer's employees for two years following the termination of the employment relationship. Id. at 125 (1). Accordingly, we address these restraints separately even though they are joined in paragraph 1 of the

(a) Non-Recruitment.

As mentioned earlier, the trial court relied on this Court's decision in *Wimmer* in ruling that the non-recruitment of FRI's employees restriction was unenforceable because it failed to contain an explicit geographic limitation. However, after the trial court entered its order, the Supreme Court of Georgia overruled our decision. *North American Senior Benefits v. Wimmer*, 319 Ga. 641 (906 SE2d 373) (2024). Our Supreme Court explained that "[w]hether a given covenant is reasonable in geographic area under subsection (a) is not dependent on whether its geographic scope is expressly stated but, rather, on the facts and circumstances of the case, as measured by the requirements of the GRCA." Id. at 649 (2). And it is not necessary for the limitation to be expressly described in geographic terms to comport with OCGA § 13-8-53 (a). Id. at 645-646 (2). Thus, as in *Wimmer*, we cannot say that an explicit geographic limitation was required in order to determine reasonableness; rather the inquiry is

employment agreement and cannot be severed. See *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 799-800 (1) (824 SE2d 717) (2019) (The "concept of severability refers to striking a distinct part of a contract and allowing the remainder to stand, not to excising certain language contained in a single provision.") (citation and punctuation omitted); compare *Grayhawk Homes, Inc. v. Addison*, 355 Ga. App. 612, 616-617 (2) (845 SE2d 356) (2020) (finding restrictive covenant agreement severable when provision was written in its own separate section).

7

whether, in light of all the circumstances, it was reasonable to prohibit Leon from recruiting any of FRI's employees. See *Wimmer*, 319 Ga. at 649 (2).

(b) Non-Solicitation of Customers.

The trial court also held that the non-solicitation of FRI's customers restriction was unenforceable due to a lack of a geographic area. However, OCGA § 13-8-53 (b) provides:

> Notwithstanding any other provision of this chapter, an employee may agree in writing for the benefit of an employer to refrain, for a stated period of time following termination, from soliciting, or attempting to solicit, directly or by assisting others, any business from any of such employer's customers, including actively seeking prospective customers, with *whom the employee had material contact during his or her employment* for purposes of providing products or services that are competitive with those provided by the employer's business. *No express reference to geographic area* or the types of products or services considered to be competitive *shall be required* in order for the restraint to be enforceable. Any reference to a prohibition against "soliciting or attempting to solicit business from customers" or *similar language shall be adequate for such purpose and narrowly construed to apply only to: (1) such of the employer's customers, including actively sought prospective customers, with whom the employee had material contact*; and (2) products or services that are competitive with those provided by the employer's business. (Emphasis added.)

In construing a statute, "we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable

way." (Citation and punctuation omitted.) *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023). Under the plain and ordinary meaning of OCGA § 13-8-53 (b), a geographic limitation is not necessarily required for a customer non-solicitation provision to be enforceable. Therefore the question remains for the trial court whether the restriction against "solicit[ing] the business of any client or customer" is enforceable under the terms on OCGA § 13-8-53 (b).

In summary, the trial court erred by finding the employee non-recruitment and customer non-solicitation provisions were unenforceable for lack of geographic limitation. Consequently, we reverse and remand to the trial court to determine, in light of the totality of the circumstances, whether the restrictions are reasonable under OCGA § 13-8-53 (a) and (b). See *Wimmer*, 319 Ga. at 649.

2. FRI next contends that the trial court erred in concluding that the language in the non-compete clause is overbroad and unenforceable as a matter of law.[4] We again agree.

OCGA § 13-8-53 (c) sets out the requirements for a non-compete restriction. OCGA § 13-8-53 (c) (1) provides:

> Activities, products, or services that are competitive with the activities, products, or services of an employer shall include activities, products, or services *that are the same as or similar to the activities, products, or services of the employer*. Whenever a description of activities, products, or services, or geographic areas, is required by this Code section, *any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement, even if the description is generalized or could possibly be stated more narrowly to exclude extraneous matters*. In case of a post-employment covenant entered into prior to termination, any good faith estimate of the activities, products, or services, or geographic areas, that may be applicable at the time of termination shall also satisfy such requirement, even if such estimate is capable of

---

[4] In finding the non-compete clause unenforceable, the trial court specifically stated:

> The language of Paragraph 2 is not overbroad because the language is too general. The language in that paragraph is quite specific. [Leon] is not permitted to "engage in, or own or control an interest in, or act as principal, director or officer of, or consultant to" any business involved with horses. The language is not a "good faith estimate" as required by subsection (c) (1), nor does it include anything resembling the safe-harbor language in subsection (c) (2). Accordingly, Paragraph 2 is overbroad and unenforceable as a matter of law.

10

including or ultimately proves to include extraneous activities, products, or services, or geographic areas. The post-employment covenant shall be construed ultimately to cover only so much of such estimate as relates to the activities actually conducted, the products or services actually offered, or the geographic areas actually involved within a reasonable period of time prior to termination. (Emphasis added.)

Additionally, OCGA § 13-8-53 (c) (2) provides:

Activities, products, or services shall be considered sufficiently described if a reference to the activities, products, or services is provided and qualified by the phrase "of the type conducted, authorized, offered, or provided within two years prior to termination" or similar language containing the same or a lesser time period. The phrase "the territory where the employee is working at the time of termination" or similar language shall be considered sufficient as a description of geographic areas if the person or entity bound by the restraint can reasonably determine the maximum reasonable scope of the restraint at the time of termination.

We find that, under the plain language of OCGA § 13-8-53 (c), the non-compete clause sufficiently and specifically provided a good faith estimate of the scope of the prohibited activities in that it prohibited Leon from engaging in business with, owning an interest in, or acting as an officer in any competitor to FRI. We find that these prohibited activities are not so overbroad to be unenforceable, as they provided notice of the reasonable expectations of the parties. See OCGA §§ 13-8-54 (a), 13-8-53 (c); *Kennedy*, 348 Ga. App. at 305-306 (d) (finding a similar scope of prohibited activities

11

enforceable). Accordingly, the trial court erred in finding the non-compete provision was overbroad, and we reverse the trial court.

3. Given our conclusion in division 1, FRI's argument that the trial court erred in refusing to exercise its discretion to "blue pencil" is moot.

*Judgment reversed and case remanded with direction. Doyle, P. J., and Padgett, J., concur.*