### 41134. LESTER v. THE STATE.
(320 SE2d 142)

SMITH, Justice.

Joe Nelson Lester was arrested for driving under the influence of alcohol, laying drags, and attempting to elude a police officer on September 17, 1983. He was convicted in the State Court of Clarke County on January 25, 1984 of driving under the influence and attempting to elude an officer. He was fined $800 and sentenced to twelve months probation and eighty hours of community service. On appeal, he raises nine enumerations of error. Finding no error, we affirm.

At 1:45 a.m. on September 17, 1983, appellant left the Night Owl Lounge, a bar on Atlanta Highway in Athens, in his pick-up truck. Officer Charles Porterfield, who was backing up a fellow officer at a traffic stop in the Night Owl parking lot, noticed appellant exiting at a high rate of speed. He pursued appellant, recorded the license tag number of the truck, and turned on his blue lights and siren. Appellant continued on until he came to Epps Bridge Road, where he

turned right.

Appellant finally pulled into a Majik Market on Epps Bridge Road and stepped out of his truck. Officer Porterfield noticed that appellant slurred his words. He also smelled alcohol on appellant's breath. He took appellant to the Clarke County jail. There, Officer Terry Arnold tested appellant on the intoximeter. Appellant's blood consisted of .16% alcohol by weight.

1. Appellant asserts, in enumerations 1 and 2, that subsection (a) (4) of the Georgia Driving Under the Influence Statute (OCGA § 40-6-391)[1] is void-for-vagueness and therefore violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Process Clause of the Constitution of the State of Georgia. Appellant does not claim that the description of the prohibited conduct is vague. He complains that the average person cannot detect that conduct until he has been arrested and given a chemical test, so that notice that the conduct is prohibited is meaningless.

"Many statutes will have some inherent vagueness for 'in most English words and phrases there lurk uncertainties.'" Rose v. Locke, 423 U. S. 48, 49, 50 (96 SC 243, 46 LE2d 185) (1975); Caby v. State, 249 Ga. 32, 33 (287 SE2d 200) (1982). Subsection (a) (4), through the use of a numerical standard, defines conduct more precisely than most other statutes. Its vagueness lies not in the ambiguity of the words used, but in the method used in applying the standard to the individual. The fact that the standard in subsection (a) (4) is based on chemical testing does not give any individual the right to more certainty than is constitutionally required of other statutes.

"All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." Rose, supra at 50. Subsection (a) (4) does not punish the individual for having a blood-alcohol count of .12% or higher. It punishes the individual for choosing to drive when his blood-alcohol count is at least .12% or for choosing to drink alcohol while driving so that his blood-alcohol count reaches the prohibited level. Subsection (a) (4) must give the individual notice so that he may make an intelligent choice when deciding whether to drive after he has been or while he is drinking.

When a person drinks, his blood-alcohol count rises. A person must consume a substantial amount of alcohol before his blood-alcohol count reaches .12%.[2] When an individual drinks a substantial

---

[1] OCGA § 40-6-391 (a) (4) "(a) A person shall not drive or be in actual physical control of any moving vehicle while: . . . (4) There is 0.12 percent or more by weight of alcohol in his blood."

[2] For a comprehensive anthology of scientific evidence regarding the amount of alcohol consumption required to push the blood-alcohol count over California's lower .10% limit, and

amount of alcohol, he is put on notice that he chooses to drive at his own peril. A person who has had enough drinks to surpass the legal blood-alcohol level can hardly be called an "innocent," trapped by an arbitrary, vague statute. See Grayned v. City of Rockford, 408 U. S. 104, 108 (92 SC 2294, 2299, 33 LE2d 222) (1972). The command that a person not drive if his blood-alcohol count is .12% or higher, is no more inscrutable to the average person than, for example, the command to refrain from committing "crimes against nature." Rose, supra. Any vagueness is different only in its derivation, not its degree.

In addition, subsection (a) (4) is virtually unique in that the notice provided the factfinder and law enforcement officials, is much more precise, in effect, than that given the public.[3] The state must show, and the factfinder must find, that the defendant had at least a .12% blood-alcohol count while he was driving. The standard leaves little room for arbitrary or selective enforcement of the statute, which is the greatest evil that notice requirements are meant to prevent. Kolender v. Lawson, ___ U. S. ___ (103 SC 1855, 75 LE2d 903) (1983).

Where the statute informs the public that a person who has consumed a large amount of alcohol chooses to drive at his own risk, we find that the statute is sufficiently definite in informing the public so that it might avoid the proscribed conduct. Where guidelines for law enforcement officials and the factfinder are very explicit, the given notice is sufficient in discouraging arbitrary enforcement. Kolender, supra. "[The] law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." Nash v. United States, 229 U. S. 373, 377 (33 SC 780, 781, 57 LE 1232) (1913). Subsection (a) (4) is not void-for-vagueness.

2. Appellant claims, in enumerations 3 and 4, that subsection (a) (4) establishes a conclusive presumption of impaired driving ability which relieves the state of the burden of proving every element of the offense beyond a reasonable doubt, in violation of the holding of Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508) (1975), and Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). Appellant misreads the statute.

Subsection (a) (4) defines a specific act, driving while having a blood-alcohol count of at least .12%, as criminal. The state is required to prove beyond a reasonable doubt that the defendant committed this act. In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970). Impaired driving ability is not a "fact necessary to constitute the crime" established in subsection (a) (4). See In re Winship,

---

the effect of that level of blood-alcohol on driving ability, see Burg v. Mun. Ct. for Santa Clara Jud. Dist., 35 Cal.3d 257, 198 Cal. Rptr. 145, 673 P2d 732 (1984).

[3] This is because the state possesses the technology to determine the individual's blood-alcohol count.

supra, at 364. Subsection (a) (4) simply sets out an alternative method of proving the crime established by the DUI statute.[4] As no presumption is involved, we find appellant's argument without merit.

3. Appellant claims that subsection (a) (4) forces the court to determine that all persons with at least a .12% blood-alcohol level will suffer impaired driving ability. He states that this legislative imposition violates the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of the Georgia Constitution by usurping the court's power to determine the facts in each case. Appellant is mistaken.

The elements of the crime established in subsection (a) (4) are irrelevant to the ability of any individual to drive without impairment while having a blood-alcohol count of .12% or higher.[5] Any defendant may challenge the state's evidence that: a) he had a blood-alcohol count of .12% or higher; while b) he was in physical control of a moving vehicle. No one source of evidence is conclusive in determining whether either of the elements occurred.[6] The state has defined the elements of the crime, and the jury finds the facts. We find no error.

4. Appellant charges that the trial court erred in admitting the results of the intoximeter test into evidence. Appellant points out that the arresting officer did not write the name of the person who performed the test on the Uniform Citation Form, in violation of Rule 570-9-.06 (11) of the Rules and Regulations of the Department of Public Safety. He claims that this regulatory non-compliance renders the results of the test inadmissible.

Here, the name of the person performing the test was written on the intoximeter test itself. Appellant, thus, knew the identity of the person who tested him, and did actually cross-examine that person, Officer Arnold, at trial. Under these circumstances, we hold the ad-

---

[4] In fact, proof of the ability to drive well while having a high blood-alcohol count will not affect the ascertainment of guilt or the determination of the punishment under subsection (a) (4). This clearly distinguishes subsection (a) (4) from the statute in question in Mullaney, supra. There, the proof, or lack of proof, that the defendant acted in the heat of passion determined whether the defendant was guilty of murder or manslaughter, a substantial difference.

[5] The legislature, in enacting subsection (a) (4), is not declaring that everyone who has a blood-alcohol count of .12% or higher will be impaired in his driving, or that everyone with a lower percentage can drive safely. The statute represents the judgment that the public interest will be best served if no one with such a high blood-alcohol count drives.

[6] *Southern Cotton Oil Co. v. Raines*, 171 Ga. 154 (155 SE 484) (1930), cited by appellant, is inapposite. There, tests performed on fertilizer by a state laboratory were deemed by statute to be conclusive evidence at trial of the quality of the fertilizer. The statute was held unconstitutional. Here, the state's test is not conclusive evidence. In addition, the state must inform the defendant upon arrest that he may have independent tests made to challenge the state's evidence, or face the possible exclusion of any state run tests. *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983). Appellant himself challenged the validity of the state's evidence in his eighth enumeration.

mission into evidence of an intoximeter test that does not satisfy the Rule and Regulation of the Department of Public Safety to be harmless error.

5. In his eighth enumeration, appellant asserts that the trial court erred in overruling his motion for a directed verdict as to the third count of the accusation, which charged him with attempting to elude a police officer. He claims that the state failed to establish that the arresting officer "prominently [displayed] his badge of office," and thus failed to prove one of the elements of the crime established by OCGA § 40-6-395 (a). The uncontradicted evidence produced at trial indicated that Officer Porterfield was in uniform, that his siren and blue lights worked, and that his car carried the identification marks of the Clarke County Police Department. While Officer Porterfield did not testify explicitly that his badge was prominently displayed, the evidence was sufficient to support the court's finding in this matter.

6. For the foregoing reasons, the trial court did not err in refusing to grant appellant a new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 5, 1984.

*Hudson & Montgomery, Kenneth Kalivoda,* for appellant.

*Ken Stula, Solicitor, Kent Lawrence, Assistant Solicitor,* for appellee.