A98A1486. RAY v. THE STATE.
(503 SE2d 391)

ELDRIDGE, Judge.

Appellant Hal Oliver Ray challenges his convictions for speeding and attempting to elude a police officer. We affirm.

"On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State,* 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "[T]he relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Cit.]" (Emphasis in original.) *Jackson v. Virginia,* supra at 319.

Viewed in this light, the facts of this case are as follows: At approximately 1:10 a.m. on Sunday, March 30, 1997, Georgia State Patrol Trooper Wayne Brantley had just completed his work shift and was driving home to Toombs County in his patrol car. While driving along Georgia Highway 178 near Reidsville, he noticed a vehicle approaching him at a high rate of speed. He checked the speed by radar, which registered the vehicle's speed at 131 mph. A second radar check confirmed this speed. Trooper Brantley pulled his patrol car onto the shoulder; activated his blue lights, "wig-wag" headlights, and siren; and made a u-turn. By this time, the speeding vehicle had passed the patrol car, and Trooper Brantley called for assistance. There were no other vehicles in the vicinity at this time.

Trooper Brantley pursued the vehicle, which abruptly turned left onto a dirt road leading to the Georgia State Prison reservation, where some of the employees of the Reidsville facility live. At the time of the incident, Ray was employed as a correctional sergeant at the facility.

The high speed chase continued on the dirt roads. After rounding

a curve, Trooper Brantley momentarily lost sight of the speeding vehicle. When he realized that the vehicle was no longer in front of him, he turned left at an intersection. He quickly found the vehicle parked behind a trailer home belonging to Keith Campbell, another prison employee and a friend of Ray. Trooper Brantley examined the vehicle and found that the hood of the vehicle was still "extremely hot. It was very apparent the car had just been parked." Another officer testified that the vehicle's muffler was "popping" as it cooled off. Trooper Brantley later confirmed that the vehicle belonged to Ray.

Additional troopers arrived at the Campbell home shortly thereafter, and Mr. and Mrs. Campbell were questioned. Both stated that Ray had arrived unexpectedly at the back door of the trailer a few minutes before; he was driving his Mustang and asked to borrow Campbell's truck. When Mr. Campbell asked why, Ray responded "Just don't ask. . . . Don't ask me any questions." Ray took the truck to his home, which was also on the reservation a short distance from the trailer.

After talking to the officers, Mr. Campbell took Trooper Brantley and other officers to Ray's home, where the truck was found. Ray was arrested and taken to the Tatnall County Jail. After being advised of his *Miranda* rights,[1] Ray told the arresting officers that he had run from the police because "he let peer pressure get the best of him or interfere with his judgment. He let the person that was riding with him encourage him to run[.]" His passenger, Timothy Cash, was very intoxicated at the time of this incident.

A few weeks later, the warden of the prison where Ray was employed questioned Ray about the charges as part of an employment investigation into the incident. Ray was required to cooperate with the investigation as a condition of employment. In response to questioning by the warden, Ray admitted that his radar detector had reacted when Trooper Brantley's radar clocked Ray's speed at 131 mph; Ray did not dispute that he was driving this speed. The warden testified that Ray admitted that he had seen "blue lights" behind him and knew he was being chased by a State Trooper, that he left his car at Mr. Campbell's home, and that he took Mr. Campbell's truck home. Ray explained to the warden that he knew he had used "bad judgment" in driving at this excessive speed and fleeing the police.

Following a jury trial on September 17, 1997, Ray was convicted of attempting to elude a police officer and speeding. The trial court denied his motion for new trial, and he appeals.

1. In his first enumeration of error, Ray contends that the trial

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

court erred in failing to direct a verdict of acquittal when the State failed to prove all of the elements of OCGA § 40-6-395 (a), which provides that: "It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle." Specifically, Ray asserts that the State presented insufficient evidence that, at the time of the alleged incident, Trooper Brantley was in uniform, displaying his police badge, and driving a marked police car.

However, Ray "was not entitled to a directed verdict of acquittal on the charge, where there is no suggestion at all that the officer was not in uniform in an appropriately marked car, and the evidence reasonably indicates he was." *Cook v. State*, 180 Ga. App. 877, 878 (350 SE2d 847) (1986). "The object of [OCGA §] 40-6-395 (a) is to ensure [that] the offense of 'attempting to elude' is not found unless the evidence allows a rational jury to conclude beyond a reasonable doubt that the person fleeing could not reasonably mistake the pursuing police car for something else. . . . When the evidence shows that the officer was on patrol and in his patrol car and had his blue light flashing and siren sounding, the jury may rationally conclude the elements of the code section are proved beyond a reasonable doubt." *Cook v. State*, supra at 878-879; see also *Lester v. State*, 253 Ga. 235, 239 (5) (320 SE2d 142) (1984) (evidence that the police officer was in uniform, that his siren and blue lights were activated, and that the police car was appropriately marked was sufficient, even though no evidence was submitted that a police badge was prominently displayed); *Finlon v. State*, 228 Ga. App. 213, 214 (2) (491 SE2d 458) (1997); *Mooney v. State*, 221 Ga. App. 420, 423 (471 SE2d 904) (1996) (evidence that the police officer displayed a "variety of objective indicia of his lawful authority" was sufficient to support jury's verdict); *Reynolds v. State*, 209 Ga. App. 628, 629-631 (434 SE2d 166) (1993).

In this case, the evidence showed that Trooper Brantley had just signed off duty and, at 1:10 a.m., was driving his patrol car, which was equipped with "wig-wag" headlights, blue lights, siren, and radar equipment. He encountered a vehicle being driven toward him at 131 mph. As the vehicle passed him, Trooper Brantley activated his lights and siren and made a "u-turn." The vehicle driver abruptly turned left onto a dirt road. Ray later admitted driving the vehicle that night at a high rate of speed, and testified that he had stopped by a friend's house in the middle of the night, borrowed a truck, and

left his car behind.

The issue to be decided by the jury was whether or not Ray wilfully attempted to flee or elude a police officer. Clearly, the type of clothing that the officer was wearing, or the presence of a specific type of badge, would be irrelevant when considering whether an individual driving 131 mph in the dark, early morning hours was aware that he was being pursued by a police officer, particularly when the patrol car's lights and siren are activated. See generally *Reynolds v. State*, supra at 630. Accordingly, any error in the State's failure to present evidence regarding the officer's attire was harmless. Ray was not entitled to a directed verdict of acquittal on the attempting to elude charge.

2. In his second enumeration of error, Ray asserts that the trial court erred in failing to conduct a *Jackson-Denno*[2] hearing regarding the voluntariness of his statements to the prison warden during non-custodial questioning about the incident; such questioning was related to Ray's employment at the prison as a correctional officer. However, Ray failed to raise this issue in his motion for new trial and failed to cite to any authority regarding this enumeration in his appellate brief to this Court, as required by Court of Appeals Rule 27 (c) (3) (i). Accordingly, this issue was waived.

Moreover, notwithstanding such waiver, the evidence is clear that Ray was being questioned by his employer and was not under arrest or in custody at the time of such questioning, so that his constitutional rights could not have been violated. *Gaston v. State*, 153 Ga. App. 538, 539 (3) (265 SE2d 866) (1980). Therefore, no *Jackson-Denno* hearing was required.[3]

3. In his third enumeration, Ray asserts that the evidence was insufficient to support the verdict. However, after applying the principles set forth in Division 1, supra, this Court finds that the evidence was more than sufficient to find Ray guilty beyond a reasonable doubt of speeding and attempting to elude a police officer. There was no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] The issue of whether Ray was entitled to a determination of the voluntariness of his statements under OCGA § 24-3-50 was not raised in this appeal and, therefore, will not be addressed herein. See generally *Griffin v. State*, 230 Ga. App. 318 (496 SE2d 480) (1998).

DECIDED JUNE 29, 1998.

*Richard D. Phillips*, for appellant.
*Wensley Hobby, Solicitor*, for appellee.