320 Ga. 770
FINAL COPY

S24A1005. CHAMBERS v. THE STATE.

BOGGS, Chief Justice.

Appellant Jerry Chambers was convicted of three counts of felony murder, predicated on fleeing or attempting to elude a police officer, following a high-speed chase and crash in downtown Savannah that resulted in the deaths of pedestrian Scott Waldrup and Appellant's passengers, Spencer Stuckey and Gabriel Magulias.[1] Appellant was also convicted of reckless driving.

---

[1] The crimes occurred on July 5, 2017. On August 16, 2017, a Chatham County grand jury indicted Appellant for three counts each of felony murder, fleeing or attempting to elude a police officer, and homicide by vehicle in the first degree based on reckless driving; two counts of aggravated assault; and reckless driving. On September 19, 2018, Appellant was reindicted with the same 12 counts and two additional counts of violating the Georgia Street Gang Terrorism and Prevention Act; the original indictment was nolle prossed. The reindictment added charges against other defendants, but Appellant's charges were severed for trial. The charges against the other defendants were related to the shooting that occurred on July 5 and to crimes committed in September 2017; the record on appeal does not reflect the disposition of those charges. At a trial from March 9 to 12, 2020, the jury found Appellant guilty of all counts, except for the aggravated assault and street gang counts. On August 25, 2020, the trial court entered the final disposition, sentencing Appellant to serve three concurrent life sentences in prison with the possibility of parole for the felony murder convictions and a concurrent term of 12 months in prison for reckless

Appellant challenges only the felony murder convictions predicated on fleeing or attempting to elude, see OCGA § 40-6-395 (a), arguing that the evidence was constitutionally insufficient to establish an essential element of fleeing or attempting to elude — that the officer who gave the signal to stop was "in uniform prominently displaying his or her badge of office," id. As explained below, we conclude that an essential element of the offense of fleeing or attempting to elude is that the officer giving the signal to stop was "in uniform prominently displaying his or her badge of office." Id. We also conclude that the State failed to meet its burden of establishing that essential element beyond a reasonable doubt. Because the State failed to present sufficient evidence of an essential element of the crime of fleeing or attempting to elude, the guilty verdicts on those counts cannot stand, and thus we must

driving. The other counts merged or were vacated by operation of law. On August 27, 2020, Appellant filed a motion for new trial, which he amended with new counsel on January 17, 2024. After a hearing on February 20, 2024, the trial court entered an order denying the motion on February 26, 2024. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the August 2024 term and orally argued on September 17, 2024.

reverse the felony murder convictions that were predicated on the underlying felonies of fleeing or attempting to elude. However, because we are reversing the felony murder convictions, the vehicular homicide counts, which were predicated on reckless driving, no longer merge. Therefore, we also remand for sentencing on the three counts of homicide by vehicle in the first degree.[2]

The evidence presented at trial showed that in the early morning hours of July 5, 2017, Appellant was driving a white SUV in the city of Savannah's City Market area, which was crowded with people celebrating the July 4 holiday. Passengers in Appellant's SUV exchanged gunfire with people on the street, and Appellant drove away. Appellant's SUV was spotted by Officers Dennis Sylvester and Amanda Brooner of the Savannah Police Department, who had finished working a "special detail," but were driving in the area in response to a "BOLO" call for the white SUV that had been involved in the City Market shooting. The officers

---

[2] The maximum sentence that may be imposed on each conviction for homicide by vehicle is 15 years. OCGA § 40-6-393 (a).

3

turned on their emergency lights and siren and observed Appellant's SUV, which had its headlights and taillights turned off, turn into an apartment complex. The officers followed Appellant's SUV, and tried to conduct a traffic stop, but Appellant did not stop. Instead, with Officers Sylvester and Brooner in pursuit, Appellant drove through the apartment complex, returned to the roadway, and drove at speeds between 80 and 90 mph, which was more than 20 mph in excess of the posted speed limit. At times, Appellant swerved into oncoming traffic, drove on a sidewalk, and ran a red light. After driving in this manner for a few minutes, and without ever turning on his lights, Appellant drove through a red light at an intersection where pedestrians were crossing the road. Appellant's SUV struck and killed pedestrian Waldrup, before spinning and crashing into a light pole on the sidewalk. Two officers who had been on foot patrol and observed the crash, Detective Brittany Harrell and Officer Lucas Hinds, saw Appellant in the driver's seat with his hands "at the steering wheel." Officer Hinds pulled Appellant from the driver's seat of the SUV, although

4

Appellant told the officers that he had been a passenger. Appellant's front seat passenger, Stuckey, and the rear seat passenger, Magulias, were both killed in the crash. Portions of video footage from body cameras worn by Officers Sylvester and Brooner and Detective Harrell, and from city-maintained surveillance cameras located in downtown Savannah, were admitted into evidence at trial and played for the jury. Additional facts relevant to the question of whether Officers Sylvester and Brooner were in uniform with a badge of office prominently displayed are set forth in Division 2.

1. Appellant was indicted for three counts of felony murder predicated on three counts of felony fleeing or attempting to elude Officer "Dennis Sylvester, an officer who at the time of giving such signal was in a uniform prominently displaying the officer's badge of office and the officer's vehicle was appropriately marked showing it to be an official police vehicle." Appellant's sole argument on appeal is that the evidence was insufficient to support his convictions for felony murder predicated on the underlying felonies

5

of fleeing or attempting to elude because there was no evidence that Officer Sylvester was "in uniform prominently displaying his or her badge of office." OCGA § 40-6-395 (a) provides:

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.[3]

In construing OCGA § 40-6-395 (a), we apply the rules of statutory construction, which require that we "give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." *State v. Cook*, 317 Ga. 659, 660 (893 SE2d 670) (2023) (cleaned up). "If the statutory text is clear and unambiguous, we attribute to the statute

---

[3] OCGA § 40-6-395 (c) (1) and (2) provide that a person who violates subsection (a) while fleeing or attempting to elude and operates his vehicle in excess of 20 miles an hour above the posted speed limit or strikes a pedestrian is guilty of a felony.

6

its plain meaning . . . ." *Major v. State*, 301 Ga. 147, 150 (800 SE2d 348) (2017) (cleaned up).

The State argues that the requirements that an officer be in uniform and that the police vehicle be appropriately marked as an official police vehicle are to be read in the disjunctive such that *either* the officer must be in uniform *or* the police vehicle must be marked as an official police vehicle. However, the State's reading is contrary to the plain language of the statute, which is written in the conjunctive: "The officer giving such signal shall be in uniform prominently displaying his or her badge of office, *and* his or her vehicle shall be appropriately marked showing it to be an official police vehicle." OCGA § 40-6-395 (a) (emphasis supplied). The statute thus clearly requires that the officer giving the signal to stop "shall be in uniform" and displaying a badge. Additionally, by the use of the conjunction "and," the legislature specified that the crime of fleeing or attempting to elude is committed when the officer who is in a police car giving a driver a signal to stop is both in uniform with the badge prominently displayed and the officer's vehicle is

appropriately marked as an official police vehicle. See *North American Senior Benefits v. Wimmer*, 319 Ga. 641, 645 (906 SE2d 373) (2024) (holding that use of conjunctive "and" in statute setting forth three requirements for validity of restrictive covenant makes clear that all three requirements must be met); *Harrison v. Wigington*, 269 Ga. 388, 390 (497 SE2d 568) (1998) (construing "and" in statute setting forth qualifications for a bondsperson according to its "normal conjunctive meaning"). See also American Heritage Dictionary of the English Language (1973) (defining "and" as "[t]ogether with or along with; also; in addition; as well as").[4] The dissent argues that the statute should be read in the disjunctive. However, the statute uses "and" rather than "or," and we must give effect to the statute as written. See *Major*, 301 Ga. at 150. The dissent also questions the need for the uniform requirement. However, the requirement that the State prove that an officer was

---

[4] The fleeing or attempting to elude statute was first enacted in 1974, see Ga. L. 1974, pp. 633, 674, § 1, and remains substantially the same as originally enacted. Therefore, in interpreting the text of the statute, we look to dictionaries that were in use around the time the statute was enacted. See *State v. SASS Group*, 315 Ga. 893, 898-899 (885 SE2d 761) (2023).

8

in uniform with a badge prominently displayed may well reflect the legislature's policy decision to define fleeing or eluding such that there is no violation when a person pulls over in response to the flashing lights and siren of a police car but then drives away when the driver of the supposed police car walks up to her car but is not in a uniform with a badge prominently displayed.

Thus, reading OCGA § 40-6-395 (a) according to its plain meaning, as we must, we conclude that one of the essential elements of the offense of fleeing or attempting to elude is that the police officer who gave the signal to the defendant driver to stop must have been in uniform with his badge of office prominently displayed.

The State and the dissent, however, resist this straightforward reading of the plain language of OCGA § 40-6-395 (a) by relying on *Maxwell v. State*, in which we affirmed a conviction for felony fleeing or attempting to elude where the defendant driver fled after receiving a signal to stop from an officer on foot. 282 Ga. 22, 23-24 (644 SE2d 822) (2007), disapproved in part on other grounds, *Willis v. State*, 304 Ga. 686, 706 n.3 (820 SE2d 640) (2018). In *Maxwell*, we

rejected the argument that fleeing or attempting to elude can be committed only when a driver flees from an officer who is in an appropriately marked police vehicle, and not when a driver flees from an officer who is on foot. Because *Maxwell* involved an officer who was on foot, its holding is limited to that factual scenario. See *Schoicket v. State*, 312 Ga. 825, 832 (865 SE2d 170) (2021) ("It is, of course, axiomatic that a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding — but actually exceeds the scope of the case's factual context — is not a holding no matter how much it sounds like one." (cleaned up)).

In *Maxwell*, we did say that OCGA § 40-6-395 (a) could be construed "to mean that, when a police officer who is not in a vehicle gives a signal to stop, he or she must be 'in uniform prominently displaying his or her badge of office,' and to mean that, when an officer who is in a police vehicle gives a signal to stop, the police vehicle must be appropriately marked." *Maxwell*, 282 Ga. at 24. However, as we have noted, *Maxwell* did not involve a defendant

fleeing from an officer in a marked police vehicle. Thus, contrary to the dissent's assertion, *Maxwell* cannot be read to hold that the "and" in OCGA § 40-6-395 (a) is to be read disjunctively such that when a driver flees from an officer who is in a car, the State need only prove that the officer was in a marked police vehicle. Nor can *Maxwell* be read to establish a "framework" for reading OCGA § 40-6-395 (a) in a manner contrary to the statute's plain language, as suggested by the dissent. At most, *Maxwell* holds that the statute's requirement that the police vehicle must be appropriately marked applies only in circumstances in which a "pursuing police vehicle" is actually involved. *Maxwell* did not hold that the statute's requirement that the officer be in uniform with a badge permanently displayed does not apply when a pursuing police vehicle is involved — nor could it, because that case involved a defendant fleeing from an officer who was not in a marked vehicle, unlike the officers here who were in a marked police vehicle. See *Schoicket*, 312 Ga. at 832.

Accordingly, we conclude that in order for the State to establish a violation of OCGA § 40-6-395 (a) when a driver flees or attempts

11

to elude an officer who is in a police vehicle, the State must prove that the officer was "in uniform prominently displaying his or her badge of office" and that his or her vehicle was "appropriately marked showing it to be an official police vehicle."[5]

2. We now turn to the sole issue raised on appeal — whether the evidence was sufficient to show beyond a reasonable doubt that either Officer Sylvester or Officer Brooner was in uniform

---

[5] The Court of Appeals previously reached this same conclusion. See, e.g., *Phillips v. State*, 162 Ga. App. 471, 472 (291 SE2d 776) (1982) (reversing conviction for fleeing or eluding for insufficient evidence and stating that "[s]ince no violation of [the predecessor to OCGA § 40-6-395 (a)] is shown unless the evidence demonstrates that the officer allegedly eluded was in the required uniform and that his vehicle was appropriately marked, the state's contention that any evidentiary deficiency in this regard is harmless is meritless"). See also *Stephens v. State*, 278 Ga. App. 694, 696 (629 SE2d 565) (2006) (quoting *Phillips* regarding essential elements of the crime of fleeing or eluding). Nevertheless, in *Ray v. State*, the Court of Appeals affirmed a conviction for fleeing or attempting to elude an officer in a police vehicle despite the absence of evidence as to the officer's uniform, holding that the lack of evidence of the officer's attire "was harmless." 233 Ga. App. 162, 165 (503 SE2d 391) (1998). *Ray* is contrary to the binding precedent set forth in *Phillips*, 162 Ga. App. at 472. See *White v. State*, 305 Ga. 111, 121 (823 SE2d 794) (2019) (Court of Appeals is bound by older precedent from that court "until reversed or overruled by the Supreme Court or overruled by the Court of Appeals." (cleaned up)). To the extent *Ray* and other Court of Appeals cases are inconsistent with the interpretation of OCGA § 40-6-395 set forth today, they are overruled. See generally *Howard v. State*, 319 Ga. 114, 119 (902 SE2d 551) (2024) (stare decisis does not apply to the review of precedent from the Court of Appeals).

12

prominently displaying the badge of office.[6] We evaluate a challenge to the constitutional sufficiency of the evidence in the light most favorable to the verdicts, asking whether the evidence presented at trial was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of each essential element of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). Our review of the sufficiency of the evidence "leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Wilkerson v. State*, 317 Ga. 242, 245 (892 SE2d 737) (2023) (cleaned up). We also recognize that jurors are "normally entitled to make reasonable inferences from circumstantial

---

[6] Appellant does not challenge the sufficiency of the evidence with regard to whether Officers Sylvester and Brooner were in an appropriately marked police vehicle. And because we no longer automatically review sua sponte the sufficiency of the evidence, except that of murder convictions resulting in the death penalty, see *Davenport v. State*, 309 Ga. 385, 398-399 (846 SE2d 83) (2020), we limit our consideration to the one argument that Appellant makes in challenging the sufficiency of the evidence. See *Scoggins v. State*, 317 Ga. 832, 837 n.6 (896 SE2d 476) (2023).

evidence," *Worthen v. State*, 304 Ga. 862, 867 (823 SE2d 291) (2019), and, in doing so, may rely "on their own common-sense understanding of the world," *Fitts v. State*, 312 Ga. 134, 142 (859 SE2d 79) (2021) (cleaned up). However, reasonable inferences must be based upon evidence and not mere speculation. See *Melancon v. State*, 319 Ga. 741, 754 (906 SE2d 725) (2024) (explaining that, for purposes of determining the constitutional sufficiency of evidence to support a conviction, "inferences require some basis in evidence" and that evidence amounting to "speculation, not inference," is insufficient to support a conviction); *McKie v. State*, 306 Ga. 111, 115 (829 SE2d 376) (2019) (holding that jurors are "entitled to draw reasonable inferences *from the evidence* based on their own common-sense understanding of the world" (cleaned up) (emphasis supplied)). See also *United States v. Klopf*, 423 F3d 1228, 1236 (11th Cir. 2005) ("Where the government relies on circumstantial evidence, reasonable inferences and not mere speculation, must support the jury's verdict." (cleaned up)). Thus, jurors are not authorized to draw an inference about the existence of an essential

element of a crime based on mere speculation.

Here, there was no direct evidence that either Officer Sylvester or Officer Brooner was in uniform with the badge of office prominently displayed. Officer Sylvester did not testify, and although Officer Brooner testified, she was not asked by the State whether she was in uniform with her badge prominently displayed at the time Appellant was given the signal to stop. Nor did the State ask any of the other nine Savannah police officers who testified whether Officer Sylvester or Officer Brooner was in uniform with a badge prominently displayed. Additionally, although the video footage that was played at trial showed several police officers at the scene of the crash who were in uniform with badges prominently displayed, the State did not ask its witnesses whether any of the officers who appeared in uniform with badges displayed in the video footage were Officer Brooner or Officer Sylvester.[7]

---

[7] It is difficult to understand why a prosecutor would fail to ask the simple questions required to elicit direct testimony that would establish the essential elements that the officer who gave the signal to stop was in a uniform with badge prominently displayed and, if in a police car, that the car was

The circumstantial evidence that was presented at trial relevant to this issue, viewed in the light most favorable to the verdicts, is as follows. From the testimony of Officer Brooner and Detective Harrell and the videos from Officer Sylvester's and Detective Harrell's body cameras, a reasonable inference can be made that Officer Brooner and Officer Sylvester appear in video footage played at trial. However, neither video shows the clothing that Officers Sylvester and Brooner were wearing, much less any badge of office that they may have been wearing. The approximately two-minute video from Officer Sylvester's body camera, which shows the beginning of the pursuit, shows him seated in the patrol car wearing long pants. The video does not show the clothing worn by Officer Brooner, who was in the passenger seat next to him. Officer Sylvester's video also shows him and Officer Brooner approaching the driver's side of Appellant's SUV after the crash, and Officer Sylvester attempting to open the driver's side door. The video does

appropriately marked as an official police vehicle.

not show the clothing worn by Officers Sylvester and Brooner; it shows only the officers' outstretched bare arms holding handguns. The approximately six-and-a-half minute video from Detective Harrell's body camera shows her approaching Appellant's SUV from the passenger side and captures Officer Sylvester approaching Appellant's SUV from the driver's side and attempting to open the driver's door. However, the pants and shirt that Officer Sylvester is wearing is obscured by Appellant's car such that it is not possible to see whether or not he was wearing a uniform or had a badge prominently displayed.

Video from Detective Harrell's body camera showed many officers at the scene of the crash. And during closing arguments, the State played a portion of the video from Detective Harrell's body camera and argued to the jury that the "officers on the other side of the car" were wearing "some shirts labeled 'Police.'" However, counsel for the State conceded at oral argument that he could not point to any portion of the video footage played at trial that showed Officer Brooner or any testimony identifying Officer Sylvester or

Officer Brooner in the video footage, and he was unable to identify any portion of the video footage that showed either Officer Sylvester or Officer Brooner in a uniform with a badge prominently displayed. The other evidence presented at trial relevant to the question of the officers' clothing consisted of Officer Brooner's testimony that her duties as an officer were to "go out on basic patrol, enforce laws, respond to calls, try to help prevent crime, that sort of stuff." However, on July 4, she and Officer Sylvester were working a "special detail" on Hutchinson Island that was scheduled to end around 10:00 p.m. After finishing their duties on Hutchinson Island, they received instructions to go to City Market because of the large crowd there. They went to City Market and left around midnight and returned to the precinct to end their shift. At the precinct, they moved their patrol bags from the "pool car" to their personal vehicles, were "taking off [their] cameras, putting the keys up, [and] getting ready to go home." During this time, a "BOLO" call went out about the shooting in City Market; the call described the suspect's vehicle and indicated that the vehicle was headed in their direction.

18

The officers returned to "[their] patrol car," with Officer Sylvester driving and Officer Brooner in the passenger seat. After the crash, Officer Sylvester exited the car, and Officer Brooner, whose body camera was not on at the time, was by his side "at the beginning." After Appellant was removed from the SUV, Officer Brooner went to check on other pedestrians who had been injured.

The evidence set forth above — that Officers Sylvester and Brooner were on duty on "special detail," without any evidence elucidating what "special detail" entailed; that other officers who responded to the scene of the crash were in uniform with a badge prominently displayed; and that Officers Sylvester and Brooner were wearing cameras and carried handguns — is insufficient circumstantial evidence to permit the jury to infer beyond a reasonable doubt that Officers Sylvester and Brooner were in uniform with their badges prominently displayed.[8]

---

[8] At oral argument, counsel for the State asserted that the fact that none of the police officer witnesses testified that any officer was in plain clothes was a circumstance that allowed the jury to determine that Officer Brooner was in uniform with her badge prominently displayed. But a jury cannot make a

These circumstances are different from those in *Lester v. State*, 253 Ga. 235, 239 (320 SE2d 142) (1984), in which we affirmed a conviction for fleeing or attempting to elude where we noted that the officer did not explicitly testify that he wore a badge, but the "uncontradicted evidence produced at trial indicated that [the officer] was in uniform" in close temporal proximity to the arrest at issue. Specifically, in *Lester*, the officer who gave the signal to stop also testified that he had been involved in a traffic stop of another vehicle when he observed the defendant speeding; that he began to pursue the defendant; that he turned on his siren and blue lights; and that his police car was appropriately marked. Id. at 235, 239. Thus, in *Lester*, there was direct evidence that the officer was wearing a uniform and was conducting a traffic stop, which is a policing activity that would be within a juror's common-sense understanding. Thus, the direct evidence in *Lester* allowed the jury to make the permissible inference that the officer was wearing a

---

reasonable inference as to the existence of an essential element of a crime from the absence of evidence as to the existence of that element. See *Melancon*, 319 Ga. at 754; *McKie*, 306 Ga. at 115.

badge. But the record here does not contain such evidence, so *Lester* does not control this case.[9]

In contrast, the evidence here is markedly different than the evidence before the jury in *Lester*. As discussed above, there was no testimony that Officers Sylvester and Brooner were wearing uniforms or displaying badges. Nor was there testimony to explain the duties required of officers on a "special detail." And the video evidence does not show either officer to be in a uniform or wearing a badge. Although the dissent speculates about the identity of one officer in Detective Harrell's body camera video, that video shows many officers present in the aftermath of the crash, and there is neither testimony nor any reasoned basis for inferring that the officer standing in front of the car and next to Detective Harrell at one point is Officer Sylvester.[10]

---

[9] Some of us doubt whether *Lester* was correctly decided, but because it does not control the issue presented in this case, we need not address its continued validity at this time.

[10] As noted above, in closing arguments, the prosecutor who tried the case pointed the jury to Detective Harrell's video and argued that it showed officers "on the other side of the car," not directly in front of the SUV, wearing

Moreover, the fact that both Officers Sylvester and Brooner were wearing body cameras and carried handguns is not enough by itself to support, beyond a reasonable doubt, the inference that the officers were in uniform with their badges prominently displayed, given that a reasonable juror would also be aware that officers who are "undercover" or in "plain clothes" may nonetheless wear hidden video recording devices and carry weapons. As prior cases have indicated, carrying a gun or wearing a video camera does not necessarily mean that an officer is both in uniform and has a badge prominently displayed. See, e.g., *Solano-Rodriguez v. State*, 295 Ga. App. 896, 897 (673 SE2d 351) (2009) (describing police officer who conducted search as wearing "plain clothes," with a badge on his waist, and carrying a concealed gun); *Casey v. State*, 295 Ga. App. 868, 868 (673 SE2d 327) (2009) (describing officer who assisted in

shirts that said "POLICE." Apparently, the prosecutor who tried this case did not see what the dissent infers from the video evidence. And at oral argument, State's counsel could not identify any portion of the video footage that showed Officer Sylvester or Officer Brooner in uniform with a badge, and Officer Sylvester did not testify so the jury could not infer that he was one of the officers seen in the video footage in a uniform and badge.

undercover drug buys as being "wired for sound and video").

Having carefully reviewed the evidence presented at trial, we conclude that the evidence was insufficient to show beyond a reasonable doubt one essential element of the offense of fleeing or attempting to elude: that the officer who gave the signal to stop was in uniform with his or her badge of office prominently displayed.[11] Accordingly, because the three counts of fleeing or attempting to elude were the only predicate felonies underlying the three counts of felony murder, the guilty verdicts on the fleeing or attempting to elude counts cannot stand, and we must reverse the felony murder counts predicated on those verdicts. See OCGA § 16-5-1 (c) (defining "felony murder"); *Johnson v. State*, 269 Ga. 840, 842 (506 SE2d 374) (1998) (reversing felony murder conviction predicated on cruelty to

---

[11] As discussed above, there was no evidence from which a reasonable juror could conclude beyond a reasonable doubt that either Officer Sylvester or Officer Brooner was in uniform with a badge prominently displayed. Thus, we need not address whether a driver commits the offense of fleeing or attempting to elude if an officer who was a passenger in the police car when the signal to stop was given was in uniform with his or her badge prominently displayed, but the officer driving the vehicle was not in uniform with his or her badge prominently displayed.

children where there was insufficient evidence to show essential elements of cruelty to children). However, as noted above in footnote 1, the trial court merged Appellant's convictions for vehicular homicide based on reckless driving into the felony murder counts and imposed a sentence on the reckless driving conviction. Because we are reversing the felony murder convictions, the counts for vehicular homicide no longer merge. See *Calloway v. State*, 303 Ga. 48, 49 (810 SE2d 105) (2018). Accordingly, we reverse Appellant's convictions for felony murder and remand to the trial court to impose sentences on the guilty verdicts on the three counts of vehicular homicide. Id.

*Judgment reversed in part and case remanded with direction. All the Justices concur, except Peterson, P. J., who concurs in judgment only in Division 2, and Ellington and LaGrua, JJ., who dissent.*

LaGrua, Justice, dissenting.

Because I believe the majority misconstrues OCGA § 40-6-395 (a) and our holding in *Maxwell v. State*, 282 Ga. 22 (644 SE2d 822)

24

(2007), I dissent.

The majority decides today that for the State to establish a violation of OCGA § 40-6-395 (a) for fleeing or attempting to elude, the State must prove *both* that the pursuing officer was "in uniform prominently displaying his or her badge of office," *and* that the pursuing vehicle was "appropriately marked" as an "official police vehicle." The majority contends that this is the only way to give proper effect to the statutory conjunctive "and." See OCGA § 40-6-395 (a) (providing that the officer giving an appropriate signal to stop "shall be in uniform prominently displaying his or her badge of office, *and* his or her vehicle shall be appropriately marked showing it to be an official police vehicle") (emphasis supplied).

If OCGA § 40-6-395 (a) solely applied to situations where the pursuing officer was in a vehicle, I would find it easier to agree with the majority's conclusion. The problem I see, however, is that the statute does not apply solely to a situation where the officer is pursuing in a vehicle. As we explained in *Maxwell*, OCGA § 40-6-395 (a) on its face contemplates two different situations, because the

25

statute's first sentence explicitly applies to a "pursuing police vehicle *or* police officer[.]" *Maxwell*, 282 Ga. at 24 (1) (citation and punctuation omitted; emphasis supplied). This means that the statute contemplates an officer pursuing on foot as well as in a vehicle. Id.

But today's decision is in immediate tension with application of the statute to an officer who is pursuing on foot, because requiring an officer to be in uniform "and" in an appropriately marked police vehicle automatically excludes application of the statute to a situation where an officer pursues on foot. Thus, we fail to give meaningful effect to the whole statute, which clearly contemplates pursuit on foot. The majority resolves this tension by determining that, pursuant to *Maxwell* and today's holding, the statutory requirement of a properly marked patrol vehicle only applies where police pursue in a vehicle. But I see nothing in *Maxwell*, OCGA § 40-6-395 (a), or the majority's opinion that supports such a reading: that the conjunctive "and" plainly governs when pursuit is by vehicle but governs not at all when pursuit is by foot.

I contend that we should follow the statutory construction we established in *Maxwell*. In that case, given OCGA § 40-6-395 (a)'s explicit application to two different situations, we parsed the statute into two prongs — one applying to pursuit on foot, the other applying to pursuit by police vehicle — explaining that

> the last sentence of subsection (a) is easily harmonized with the first and second sentences by construing it to mean that, when a police officer who is not in a vehicle gives a signal to stop, he or she must be "in uniform prominently displaying his or her badge of office," and to mean that, when an officer who is in a police vehicle gives a signal to stop, the police vehicle must be appropriately marked.

*Maxwell*, 282 Ga. at 24 (1).

Moreover, as we explained in *Maxwell*, "the purpose of the last sentence of subsection (a) is to [e]nsure that drivers of vehicles will have notice that they are being signaled to stop by the police[.]" 282 Ga. at 24 (1). A properly marked police vehicle, especially with the statutorily-required emergency light and/or siren activated, surely satisfies this purpose. In contrast, one is hard pressed to imagine why an individual who, for example, is driving in front of a pursuing

officer in a properly marked vehicle with lights and/or siren activated, would need further notice that police are pursuing said person. Nor is it easy to imagine how that individual would benefit from such further notice, since the individual would be unlikely to see that the officer in pursuit was wearing a uniform with a prominently displayed badge.

The instant matter is a case in point. As the majority notes, when Officers Sylvester and Brooner began pursuit, they activated emergency lights and siren and tried to conduct a traffic stop. But Chambers eluded at speeds of up to 80 or 90 mph, swerving into traffic, driving onto a sidewalk, and running a red light. Pursuit ended when Chambers crashed, killing three people and injuring others. As far as I can tell from the video admitted at trial, Officers Sylvester and Brooner never got close enough for Chambers to see their clothing, nor is there any evidence suggesting that Chambers would have behaved any differently had he seen the officers' attire, rendering the question of Officers Sylvester and Brooner's clothing

28

irrelevant.[12]

[12] As the majority notes, the Court of Appeals held similarly in *Ray v. State*, 233 Ga. App. 162, 164-165 (1) (503 SE2d 391) (1998) (concluding that direct evidence of a marked car, police uniform, and badge was not necessary where there was "no suggestion at all that the officer was not in uniform in an appropriately marked car, and the evidence reasonably indicates he was." Moreover, any error was harmless because the pursuing officer's clothing and badge were "[c]learly . . . irrelevant" when pursuing an individual who was "driving 131 mph in the dark, early morning hours . . . particularly when the patrol car's lights and siren are activated") (citations and punctuation omitted). Other opinions from the Court of Appeals reach the same or similar results, or are in accord. See, e.g., *English v. State*, 261 Ga. App. 157, 158 (1) (582 SE2d 136) (2003) (same, citing *Ray*, 233 Ga. App. at 164 (1)); *Cook v. State*, 180 Ga. App. 877, 878-879 (1) (350 SE2d 847) (1986) (holding that a jury could "rationally conclude" that all the elements of OCGA § 40-6-395 (a) were met "[w]hen the evidence shows that the officer was on patrol and in his patrol car and had his blue light flashing and siren sounding." Any failure to prove all the elements of the statute was "harmless as a matter of fact" where the appellant claimed not to have seen the pursuing vehicle at all.); *Mooney v. State*, 221 Ga. App. 420, 423 (1) (471 SE2d 904) (1996) (concluding that though the deputy pursuing in a marked patrol car with emergency lights and sirens activated was wearing blue jeans, evidence that the deputy "displayed a variety of objective indicia of his lawful authority was sufficient to authorize the jury's determination that [the appellant] was unlawfully attempting to elude") (physical precedent); *Thelusma v. State*, 356 Ga. App. 495, 496-497 (1) (a) (847 SE2d 852) (2020) (holding that notwithstanding the appellant's argument that the State failed to prove that the pursing officer "prominently displayed his badge of office and that his vehicle was appropriately marked as an official police vehicle," evidence that the pursuing officer was on duty and responding in a patrol car with activated emergency lights and siren, joined by other patrol cars with activated emergency lights and sirens, was sufficient to find that the appellant "was aware he was fleeing from police and was therefore guilty of fleeing or attempting to elude"). Accord *Finlon v. State*, 228 Ga. App. 213, 213-214 (2) (491 SE2d 458) (1997) (holding that the evidence was sufficient to convict of fleeing or attempting to elude when an officer in a marked patrol car followed the appellant for over three miles with siren and emergency lights flashing); *Tauch v. State*, 305 Ga. App. 643, 646 (2) (700 SE2d

Thus, *Maxwell* considers "the entire scheme of the statute," gives "sensible and intelligent effect to all of its provisions," refrains from "construing the statute in a way that renders any part of it meaningless," and fully effectuates OCGA § 40-6-395 (a)'s purpose of "[e]nsur[ing] that drivers of vehicles will have notice that they are being signaled to stop by the police." *Maxwell,* 282 Ga. at 23-24 (1) (citations and punctuation omitted). We should follow *Maxwell*'s framework here. The evidence admitted at trial establishes that Officers Sylvester and Brooner pursued Chambers in a marked patrol car with emergency lights and siren activated, which Chambers generally concedes in his reply brief,[13] but Chambers failed to stop, leading to a high-speed pursuit with disastrous consequences. That is sufficient to satisfy OCGA § 40-6-395 (a) and uphold Chambers's convictions for fleeing or attempting to elude.

---

645) (2010) (concluding that the evidence was sufficient to convict of fleeing or attempting to elude where officers engaged in a "high-speed chase" in "clearly marked" patrol vehicles "with their emergency lights and sirens activated").

[13] "Chambers acknowledges that State's Exhibit 5 shows [Chambers's vehicle] followed by a police car with lights engaged and markings on the side and that State's Exhibit 6 depicts the pursuing vehicle with appropriate markings."

Finally, assuming for the sake of argument that the State must prove that Officers Sylvester and Brooner were in uniform with respective badges properly displayed, I believe that the evidence admitted at trial was more than sufficient for the jury to so find, as the trial court held when it denied Chambers's respective motions for directed verdict and for new trial.

As the majority notes, Officers Sylvester and Brooner responded to a BOLO in a "patrol car" which the evidence establishes, and Chambers concedes, was a properly marked police vehicle with emergency lights and sirens activated. They engaged in a high-speed chase in tandem with other law enforcement. Both officers carried guns, and Officer Sylvester drew his. Both officers were wearing body cameras.

In addition to these facts, I maintain that the jury, considering Officer Sylvester's body camera footage with Detective Harrell's, could reasonably determine that Officer Sylvester was wearing a dark-colored shirt, consistent with the dark-colored shirt many uniformed officers were wearing that night, which was briefly visible

31

when he tried to open Chambers's driver-side door. Unable to open the door, the jury could reasonably determine that Officer Sylvester circled around the front of Chambers's vehicle to stand directly next to Detective Harrell, where Officer Sylvester stayed for the rest of the applicable recordings. The jury could reasonably infer that Detective Harrell's video shows Officer Sylvester standing directly in front of Chambers's vehicle wearing a dark shirt with "POLICE" on the back, light-colored pants consistent with what other officers were wearing, and a gun belt with several items of what appear to be tactical gear. And the jury could conclude that Officer Sylvester was wearing a badge on his chest, because Detective Harrell's video records a uniformed officer standing in the same spot where Sylvester's body camera footage indicates he was standing, wearing a badge, sometimes inferable from the gleam on his chest but directly visible in a few frames.

Taken together, this evidence was sufficient to support the inference that Officers Sylvester and Brooner were wearing uniforms with badges properly affixed, preserving Chambers's

convictions for fleeing or attempting to elude.

Finally, the majority contends that evidence that Officers Sylvester and Brooner were on duty on a "special detail"; that the many other officers responding to the scene of the crash were in full uniform; and that Officers Sylvester and Brooner were wearing body cameras and carrying handguns would not, by itself, allow the jury to infer that the officers were uniformed and badged. But there is more evidence than that, as set out above, which is sufficient to sustain Chambers's convictions for fleeing and attempting to elude.[14] See *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020) (holding that our "limited review" of the sufficiency of the evidence "leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable

---

[14] The majority argues at one point that evidence that Officers Sylvester and Brooner were wearing body cameras and handguns is not by itself sufficient to support the inference that Officers Sylvester and Brooner were in uniform and wearing badges, because officers in plainclothes may also wear body cameras and carry guns. Perhaps. But the fact that plainclothes officers also wear cameras and carry guns does not preclude the jury from determining that Officers Sylvester and Brooner were in uniform at the time in question. Rather, that fact is simply something that the jury could weigh and consider in determining whether Officers Sylvester and Brooner were in appropriate attire as they pursued Chambers.

inferences to be made from basic facts to ultimate facts") (citation and punctuation omitted); *McKie v. State*, 306 Ga. 111, 115 (829 SE2d 376) (2019) (holding that "jurors are entitled to draw reasonable inferences from the evidence based on their own common-sense understanding of the world") (citation and punctuation omitted).

Thus, viewed in the light most favorable to the verdict, and deferring to the jury's assessment of the weight and credibility of the evidence, the evidence admitted at trial was sufficient for the jury to conclude that Officers Sylvester and Brooner were both in uniform with their respective badges appropriately displayed, preserving Chambers's convictions for fleeing or attempting to elude. See *Lester v. State*, 253 Ga. 235, 239 (5) (320 SE2d 142) (1984) (holding that although the pursuing officer did not "testify explicitly that his badge was prominently displayed," uncontradicted evidence that the officer "was in uniform, that his siren and blue lights worked, and that his car carried the identification marks of the Clarke County Police Department," was "sufficient" to support the charge of fleeing

or eluding).

Therefore, I respectfully dissent.

I am authorized to state that Justice Ellington joins in this dissent.

Decided January 28, 2025 — Reconsideration denied February 18, 2025.

Murder. Chatham Superior Court. Before Judge Karpf.

*Amanda J. Walker, Kaitlyn E. Walker*, for appellant.

*Shalena Cook Jones, District Attorney, Meredith L. Layman, Lyle Burnham II, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.