**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 12, 2026

# In the Court of Appeals of Georgia

A26A0810. BROWN v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Timothy Brown was convicted of simple assault as a lesser-included charge of aggravated assault, two counts of fleeing and attempting to elude, and driving without a license on his person. The trial court denied his amended motion for new trial, and Brown appeals, arguing that the State failed to present sufficient evidence from which the jury could find beyond a reasonable doubt that the deputy who ordered him to stop was in a uniform prominently displaying a badge of office, which is an essential element of the two counts of fleeing and attempting to elude. For the reasons that follow, we reverse.

Viewing the evidence in the light most favorable to the jury's verdict, see *Chambers v. State*, 320 Ga. 770, 775(2) (911 SE2d 616) (2025), the record shows that Spencer Wade was driving southbound on an interstate toward Monroe County in October 2015. Wade testified that he was in the left-hand lane and a red sedan driven by Brown merged toward him, causing Wade to swerve into the left-hand emergency lane. Brown continued on in traffic, and instead of maintaining his position, Wade made his way to Brown and then moved into the middle lanes. Instead of continuing on his way, Brown drove beside Wade, making a rude gesture and mouthing something to him, and Wade "mouthed some ugly things" back to Brown. Brown then pulled a weapon and pointed it at Wade, who responded by mouthing "you just F-ed up," before calling emergency services. Wade testified that Brown accelerated through traffic, but Wade sped after him, pursuing Brown at high speeds until law enforcement arrived.

A deputy with the Monroe County Sheriff's Department responded to a dispatch report of Wade's call, and he testified that he was working and driving a marked vehicle with a roof-mounted light bar. After hearing the report, he crossed over the median from the northbound side of the highway around mile marker 189

when he saw Brown's vehicle. The deputy testified that he saw Brown at that time and activated his lights and siren, but Brown accelerated over 100 miles per hour and maneuvered as if to take exit 187, instead pulling over on the shoulder after the return ramp from that exit. Two officers who were in other vehicles on the deceleration ramp of the exit pulled in behind the deputy after the stop, but no video was available from any of the law enforcement vehicles or officers involved.

Brown testified in his own defense that Wade had actually instigated the incident by driving aggressively and tailgating him but admitted to pulling out a handgun, which he claimed he only pointed toward the roof of his own vehicle in an effort to get Wade to stop following him. Brown testified that he saw the deputy's vehicle turning through the median from the northbound-side of the interstate, but he denied being able to reach the claimed speeds in his Ford Focus and also claimed the he was not signaled to stop until just before exit 187.

At the close of evidence, the jury found Brown guilty of simple assault as a lesser-included charge of aggravated assault, two counts of fleeing and attempting to elude, and one count of failure to carry a license on his person. After the trial court summarily denied his amended motion for new trial, Brown appealed.

Brown argues that the trial court erred by denying his amended motion for new trial as to the two counts of fleeing and attempting to elude because there was no evidence that the deputy was in uniform or had his badge prominently displayed. We agree.

In *Chambers*, 320 Ga. at 770, the Supreme Court of Georgia addressed the proof requirement for OCGA § 40-6-395, explaining that

> in order for the State to establish a violation of OCGA § 40-6-395(a) when a driver flees or attempts to elude an officer who is in a police vehicle, the State must prove that the officer was "in uniform prominently displaying his or her badge of office" *and* that his or her vehicle was "appropriately marked showing it to be an official police vehicle."

Id. at 774(1) (emphasis added). The State argued the two elements should be read disjunctively, but the Court held that these were both essential elements and overruled several cases that held the failure to prove an officer was in uniform with a badge prominently displayed was harmless if the State had proven that the officer was in a marked official vehicle. See id. at 772–74(1), n.5.

The Court then addressed the facts of Chambers's case, explaining that the pursuing officers were on special detail and had gone back to the precinct in order to

4

go home, but they joined the chase after hearing from dispatch that Chambers was close. See id. at 775-79(2), 780–84 (LaGrua, J., dissenting, includes additional details from the videos). The Court held that insufficient evidence was presented for the jury to return a guilty verdict as to those counts because none of the witnesses testified that the pursuing officers were in uniform with badges prominently displayed, nor did any witness testify that the video evidence included visuals of the clothing or badges of either of the two pursuing officers.[1] See id. at 775-79(2), 780–84 (LaGrua, J., dissenting, includes additional details from the videos). The Court explained that although jurors may make "reasonable inferences from circumstantial evidence" and rely on their "'common-sense understanding of the world,'" "jurors are not authorized to draw an inference about the existence of an essential element of a crime based on mere speculation." Id. at 775–76(2).

In this case, the only testimony regarding the deputy was that he was "working patrol" and that he was in a marked patrol car with a light bar on the roof. There also was testimony that he activated his lights and siren, he communicated via radio, and he drew his service weapon during the "felony arrest" of Brown. Nevertheless, the

---

[1] The Court noted that many officers in uniform with visible badges were shown in the videos. See *Chambers*, 320 Ga. at 776–77(2).

State failed to elicit any explicit testimony that the deputy was in his uniform or that he had his badge prominently displayed. Nor were any videos or photographs of the scene available that depicted the pursuing deputy or any of the other officers.

Relying on *Lester v. State*, 253 Ga. 235 (320 SE2d 142) (1984), which was discussed by the Court in *Chambers*, 320 Ga. at 778(2), the State argues that the jurors could reasonably infer that the deputy was in uniform with a badge prominently displayed because he was working patrol in a marked sheriff's vehicle, because he was communicating over a radio with dispatch and another deputy, and because the defendant referred to the deputy and officers as officers in his testimony. We disagree.

In *Lester*, very few facts from the record are recited in the opinion, which mostly addresses issues related to driving under the influence. 253 Ga. at 235–36. In the final division, however, the defendant argued that the Court should overturn his conviction for fleeing and attempting to elude because there was no evidence that the officer had his badge prominently displayed. See *Lester*, 253 Ga. at 239(5). The Court explained that the jury could reasonably infer that a badge was prominently displayed because "[t]he uncontradicted evidence produced at trial indicated that [the officer] was in uniform." Id. Thus, we do not read *Lester* to support the State's argument here. See

id. See also *Chambers*, 320 Ga. at 778(2) n.9 (noting that some of the members of the Supreme Court "doubt whether *Lester* was correctly decided" but did not reach the issue of whether to overturn it at that time).[2]

In this case, while it is *likely* that the deputy was in uniform given that he was "working patrol" in a marked sheriff's car,[3] there was not sufficient evidence to support a finding beyond a reasonable doubt that the deputy was in uniform or had his badge prominently displayed. See *Chambers*, 320 Ga. at 778–79(2) (holding that carrying a service weapon and video device surrounded by many other uniformed, badge wearing officers and driving a marked patrol car were not enough to support a finding that the officers were in uniform rather than plain clothes). Cf. *Allaben v. State*,

---

[2] There is some discussion in *Chambers* in which the Supreme Court contrasts the situation in *Lester* with the situation in *Chambers* that leaves open the possibility for circumstantial testimony regarding an officer that would be enough from which a jury could infer that an officer was in uniform with a badge prominently displayed, but whatever that mark is post-*Chambers*, we do not think that the State has met it given the dearth of testimony related to that element in this case. See *Chambers*, 320 Ga. at 778–79; *Lester*, 253 Ga. at 235–36, 239(5). As the Court in Chambers observed, the State should "ask the simple questions required to elicit direct testimony that would establish the essential elements" regarding the uniform and badge of an officer to prove the crime. 320 Ga. at 776(2) n.7.

[3] We question whether being in a marked patrol car should be viewed as part of the evidence supporting the element of uniform, at some point reliance on that evidence for proof of both elements renders the uniform element superfluous.

315 Ga. 789, 795–96(2) (885 SE2d 1) (2023) (addressing the question of sufficiency of the evidence of venue if no witness is directly questioned about the issue and listing the various pieces of evidence to support a jury's determination thereof); *Sims v. State*, 312 Ga. 322, 328–29(2)(c) (862 SE2d 534) (2021) (same). Nor was Brown's testimony that officers arrested him sufficient to support such an inference as the State has argued. His testimony must be viewed in the context it was given, which indicates Brown was discussing the vehicles he saw and not the deputy's physical appearance, and certainly, we do not construe it as an admission of this essential element. See id. Accordingly, the trial court erred by denying the amended motion for new trial, and the two counts of fleeing and attempting to elude are reversed.

*Judgment reversed. Davis, J., and Senior Judge C. Andrew Fuller concur.*